180 N.J. Super. 175 (1981)
434 A.2d 620
DOROTHY S. MACMILLAN ET AL. (MEDFORD LEAS), PLAINTIFFS-RESPONDENTS,
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT-APPELLANT. GERTRUDE MILLS ET AL., PLAINTIFFS-RESPONDENTS,
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT-APPELLANT, AND EAST WINDSOR TOWNSHIP AND BOROUGH OF HIGHTSTOWN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted June 9, 1981.
Decided July 17, 1981.
*176 Before Judges FRITZ, POLOW and JOELSON.
James R. Zazzali, Attorney General of New Jersey, attorney for appellant (John J. Degnan, former Attorney General of New Jersey; Stephen Skillman, Assistant Attorney General, of counsel; Harry Haushalter, Deputy Attorney General, on the brief).
Brown, Connery, Kulp, Wille, Purnell & Greene, attorneys for respondents Dorothy S. MacMillan et al.
Smith, Stratton, Wise & Heher, attorneys for respondents Gertrude Mills et al.
The opinion of the court was delivered by FRITZ, P.J.A.D.
Never more than here did an appeal tend to demonstrate the capacity of hard facts to make bad law. The sole question involved is the eligibility of retirement community residents for tax rebates under the Homestead Rebate Act, N.J.S.A. 54:4-3.80 et seq. The opinion of the tax court judge in Mills v. East Windsor Tp. appears at 176 N.J. Super. 271 (Tax Ct. 1980). His *177 consistent determination in MacMillan v. Taxation Div. Director was announced by unpublished letter opinion and was reached "for the reasons set forth in the opinion in" Mills. The factual milieu is not disputed and is set forth in the tax court opinion in Mills, supra. As the tax court judge observed in his MacMillan opinion, the factual circumstances in that case "are essentially the same" as those in Mills. Accordingly, we have consolidated the two matters and here treat them as one.
We respect the demonstrated humanity of the tax court judge. We are not sufficiently insensitive to demean his concern for "common sense" or his reach for the "equity of the statute" principle. We are not sufficiently bold to gainsay stubbornly his conviction that "if the Legislature were [today] to consider squarely the status of retirement community residents it would treat them for purposes of the act the same as `tenants for life' and accordingly as eligible for the rebate."
But we remain judges and as such cannot succumb to the humanistic pressures or substitute our concern in place of the legislative design. Indeed, we may not even permit ourselves the luxury of liberal construction  or, as a matter of fact, any construction  if the words of the statute plainly convey the legislative intent, as we are persuaded they do here. We must enforce the legislative will as written. Dacunzo v. Edgye, 19 N.J. 443, 451 (1955). We certainly may not supply a provision no matter how confident we are of what the Legislature would do if it were to reconsider today. Stamboulos v. McKee, 134 N.J. Super. 567 (App.Div. 1975). "Construing" or "interpreting" a clear and unambiguous statute is simply not permissible.
More significant than the result in any one case is the wear of the forbidden practice on the doctrine of separation of powers. Watt v. Franklin, 21 N.J. 274, 277 (1956). To the extent the executive or the judiciary superimposes its judgment on the clearly expressed will of the Legislature, we threaten the doctrine itself and its function as a viable control on our government of laws.
*178 Restraint is particularly essential in tax matters. As the Supreme Court observed in Ridgefield Park v. Bergen Cty. Bd. of Taxation, 31 N.J. 420, 431 (1960), "The judiciary has no power to devise tax programs or to qualify the existing legislative mandate with a judge's private view of what is just or sensible." This is because of the essentiality of the taxing role in government.
The taxing power lies at the heart of government. Without taxes government could not function. Any impairment of the taxing power affects the lifeblood of government. [N.J. Turnpike Auth. v. Washington Tp., 16 N.J. 38, 44 (1954)]
Implementation of these principles and application of these standards are demonstrated by the fact that when statutory construction is necessary or permitted, tax preference provisions are strictly construed against those claiming exemption. This is so with regard to local property taxes. Bloomfield v. Academy of Med. of N.J., 47 N.J. 358, 363 (1966). It is also true with respect to state taxes. Allied Textile Printers v. Taxation Div. Director, 145 N.J. Super. 456, 461 (App.Div. 1976), certif. den., 74 N.J. 271 (1977) (business personal property and sales taxes); Pine Grove Manor v. Taxation Div. Director, 68 N.J. Super. 135, 153-154 (App.Div. 1961) (corporation business tax); In re Lillis Estate, 123 N.J. Super. 280, 283 (App.Div. 1973) (transfer inheritance tax).
The tax court judge distinguishes between a tax exemption and a tax rebate. He points out that no local tax revenues are diverted and that actual payment is made from gross income tax revenues on deposit in the Property Tax Relief Fund. The distinction is technical. The fact remains that rebate payments not authorized by statute at the very least change the proportion in which tax revenues are derived from that inherent in the legislatively mandated scheme. Without regard for the obvious statement (although perhaps it is illusory to a degree and in a manner not important to the individual taxpayer) that there seems to be little difference between not taking the money in the first instance and later refunding it or part of it, we have no doubt that for the reasons given in all the cases cited and others, *179 maximum effort must be applied to effectuating carefully and cautiously the balance established by the Legislature.
Nor should we lose sight of the fact that answers so clear and necessary in our view that they tempt us to embellish must be equally clear to the many fine minds in the Legislature, the body charged with determining the necessity in any event. We may, of course, draw the attention of the Legislature to the result (Dacunzo v. Edgye, supra, 19 N.J. at 454) and this seems to be an entirely appropriate situation in which to do that.
We are not insensitive to the many persuasions which moved the tax court judge and which are here urged by respondents. As is pointed out in Mills, supra, these residents
... are by no means transient or seasonal residents of New Jersey. They have almost invariably sold their homes and invested their savings in a capital fee paid to the retirement community. These fees range from $20,000 to $65,000. Plaintiffs and other residents of retirement communities certainly have more invested in their "homes" than do tenants of apartments, who at least would be entitled to homestead credits against the gross income tax. [176 N.J. Super. at 282]
But the fact remains that the statute is outspoken and unambiguous. The statutory scheme is clear. The legislation requires a proprietary interest which, it expressly details, is satisfied only by: legal or beneficial ownership; a tenancy for life or for 99 years or more; possession and entitlement thereto under an executory contract or under an agreement with a lending institution which holds title as security, or as resident shareholdership in a cooperative or mutual housing corporation. N.J.S.A. 54:4-3.80. The tax court judge recognized, as is the fact, that the "life-care" residents (Onderdonk v. Presbyterian Homes of N.J., 85 N.J. 171 (1981)) do not have a proprietary interest in their place of residence. Satisfied that "[a]lthough plaintiffs do not possess an ownership interest in Meadow Lakes, the spirit of the Homestead Rebate Act indicates ... they should be treated as owners for purposes of the act," (Mills, supra, 176 N.J. Super. at 282), and that "[e]quity and common sense require this result," (ibid.), he then rejected the clear statutory prerequisite and added life-care residents to the list of *180 those eligible for rebate. We do not lack sympathy or appreciation for his concern. We simply do not agree with his judgment for we are convinced that neither he nor we may thus preempt the legislative function.
Reversed and remanded to the Tax Court for the entry of a concordant judgment.