ANDREW, J.T.C.
This is a case involving the interpretation of a provision of the Homestead Property Tax Rebate Act of 1990 (the act), N.J.S.A. 54:4-8.57 to -8.66. Plaintiff, George Vavoulakis, a resident of a rooming house, challenges the denial by defen *320 dant, Director of the Division of Taxation, of plaintiff’s application for a homestead rebate on the basis that plaintiff is not qualified for the rebate because plaintiff does not occupy a rental unit with separate kitchen and bathroom facilities. Plaintiff maintains that since he has access, on a shared basis with other rooming-house residents, to common bathroom and kitchen facilities, he satisfies the statutory requisites for the homestead rebate.
In addition, plaintiff claims that he has filed his complaint, not only in his own interest, but also on behalf of other rooming-house residents, similarly situated throughout this State, whose rental units include use of, not individually separate, but, shared or common, kitchen and bathroom facilities. Thus, plaintiff seeks a determination by this court, (1) that his rental unit need not have separate kitchen and bathroom facilities to enable him to obtain the rebate, (2) permitting the action to be maintained as a class action to allow similarly situated rooming-house residents to participate in the homestead rebate program for the 1991 tax year by extending the filing deadline for submission of homestead rebate claims beyond the August 15, 1991 date set by the Director. See N.J.A.C. 18:12-7.15.
The factual background involved in this matter is uncomplicated and can be stated briefly. It is uncontroverted that plaintiff was a resident of a rooming house located at 10 High Street, New Brunswick, New Jersey. He had the exclusive use of one room on the first floor and shared a common kitchen and bathroom with three other first-floor residents of the rooming house.
On August 9,1991, plaintiff went to the Newark office of the Division of Taxation for the purpose of submitting an application for a homestead rebate. Initially, it appears that he was notified by a clerk at the Division’s office that his application would not be accepted,[1] but ultimately plaintiff did, in fact, *321 complete a homestead rebate application which was accepted by the Division on that day, i.e., August 9, 1991.
Presumably, because of the statutory requirement that “no rebate [would] be allowed pursuant to [the] act,” unless a timely application was submitted, see N.J.S.A. 54:4-8.62, and the last date for filing was August 15,1991, see N.J.A.C. 18:12— 7.15, plaintiff asserts that a notice was delivered to the Director on August 15, 1991,[2] advising that the application filed by plaintiff on August 9, 1991 was to be considered filed, not only on his own behalf, but also on behalf of all other similarly situated rooming house residents in this State.
The parties stipulated that plaintiff, individually, satisfied all of the statutory requirements for a homestead rebate save for the fact that his residence did not meet the requirement of a separate kitchen and bathroom as set forth in the Director’s *322 interpretation of the relevant statute. By letter dated October 18, 1991, the Director denied plaintiffs individual application, specifically, because his rooming house residence lacked separate kitchen and bathroom facilities.
On November 15, 1991, plaintiff filed a complaint with this court challenging the Director’s construction of the phrase “residential rental property” as defined in N.J.S.A. 54:4-8.58 which, according to the Director, limits homestead rebates to those rooming-house residents who have separate kitchen and bathroom facilities.
Plaintiff maintains that the Director’s interpretation of the phrase “residential rental property” with respect to rooming houses is: (1) contrary to the meaning and spirit of the statutory language, and (2) an unlawful exercise in rule-making inasmuch as the Director has not adopted a regulation in compliance with the Administrative Procedure Act (APA), N.J.S.A. 52.-14B-1 et seq.
Lastly, assuming plaintiff is successful on one or both of the above contentions, he seeks an order based on the class action court rule, R. 4:32-1, permitting all rooming-house residents, in like circumstances in this State, a reasonable period of time within which to file homestead rebate application forms pursuant to N.J.S.A. 54:4-8.62, and thus, permit the Director to make the necessary individual determinations relative to whether each member of the purported class satisfies all of the other statutory requirements and, also, to compute the appropriate individual amount of rebate. In essence, plaintiff’s action seeks nothing more than an extension of the filing deadline for homestead rebate applications for the members of the alleged class provided plaintiff prevails on the primary issue in this case.
The Director, in response, contends that: (1) his construction of the operative law is proper, (2) he did not violate the APA because he did not engage in impermissible rule-making, and (3) to permit plaintiff to maintain a class action for the purported class members “who have not filed applications for homestead *323 property tax rebates would improperly waive the statutory requirements respecting [thel timely filing of applications [contrary to] N.J.S.A. 54:4-8.62.”
I.

Must a rooming-house resident have a separate kitchen and bathroom in order to be eligible for a homestead rebate?

As has been previously observed, homestead rebates were first authorized in this State when our Constitution was amended in 1975 to permit a measure of property tax relief. N.J. Const. (1947) Art. VIII, § 1, par. 5. Before the specific statutory sections in this case are considered it would be helpful to briefly review the rebate legislation adopted by our Legislature prior to the present Homestead Property Tax Rebate Act of 1990.
In 1976, the Legislature enacted the Homestead Rebate Act, N.J.S.A. 54:4-3.80 to -3.94 and the Tenants’ Property Tax Rebate Act, N.J.S.A. 54:4-6.2 et seq. These enactments sought to provide a measure of property tax relief for homeowners and residential tenants once the then-anticipated New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 et seq., became effective. Once the Gross Income Tax Act was enacted, our Legislature also provided for a credit against the tax for qualified residential tenants. N.J.S.A. 54A:4-3.
Thereafter, in 1985, the Legislature enacted the Homestead Tax Relief Act (commonly known as the Ford bill), N.J.S.A. 54A:3A-1 to -14, which was designed to provide a deduction for certain property taxes for homeowners and residential tenants from the gross income tax.
The present legislation, the Homestead Property Tax Rebate Act of 1990, is the Legislature’s latest attempt to provide property tax relief in the form of rebates for both homeowners and residential tenants. The current act both repeals and replaces the Homestead Rebate Act, N.J.S.A. 54:4-3.80 et seq., *324 the Homestead Tax Relief Act, N.J.S.A. 54A:3A-1 et seq., and the homestead credit for tenants in the Gross Income Tax Act, N.J.S.A. 54A:4-3. See L. 1990, c. 61, § 19.
The act provides for a homestead rebate to a resident of this State, among others, “whose homestead is a unit of residential rental property____” N.J.S.A. 54:4-8.60. Homestead is defined in N.J.S.A. 54:4-8.58 to include, “a unit of residential rental property which unit constitutes the place of the claimant’s domicile and is used by the claimant as the claimant’s principal residence____”
“Residential rental property” is defined in N.J.S.A. 54:4-8.58, in part, as:
a. any building or structure or complex of buildings or structures in which dwelling units are rented or leased or offered for rental or lease for residential purposes:
b. a rooming house, hotel or motel, if the rooms constituting the homestead are equipped with kitchen and bathroom facilities____ [Emphasis supplied]
The Director maintains that the statutory language makes it clear that not all rooming-house residents are entitled to a rebate under the statute. Rather, only “if the rooms constituting the homestead” of the rooming-house resident are equipped with kitchen and bathroom facilities is a rooming-house resident entitled to a rebate. Thus, only residents with separate, not shared, facilities qualify.
The Director argues that the use of the expression “are equipped” relates to the plural subject “rooms constituting the homestead” and not the singular “rooming house,” and therefore, the “rooms constituting the homestead” must be equipped with the requisite facilities.
The Director also notes that the “rooms constituting the homestead” must constitute a “unit of residential rental property,” and the term “unit” as defined by Webster’s Third New International Dictionary (1976) at 2500, is “a single thing ... a constituent and isolable member of some more inclusive whole.” Therefore, the “rooms constituting the homestead” *325 must make up a single segment of the entire residential property-
The Director also points out that the “rooms” must constitute the domicile of the claimant and that the claimant’s domicile is not the entire rooming house, but only the room or rooms over which the resident has sole responsibility.
In contrast, plaintiff maintains that the language employed in the definition of “residential rental property,” i.e., “a rooming house ... if the rooms constituting the homestead are equipped with kitchen and bathroom facilities” does not require separate kitchen and bathroom facilities. Plaintiff argues that defendant’s interpretation ignores the ordinary and primary meaning of the words employed by the Legislature. Plaintiff focuses on the word “equipped” which he defines as “to furnish for service or action” and asserts that rooming house residents are eligible for rebates if their residences are furnished with kitchen and bathroom facilities, and therefore, shared facilities qualify. The argument is not persuasive.
To begin with, providing a definition for the word “equipped” does not assist the required analysis. As a matter of fact, the Director would not disagree with plaintiff's definition since the Director has indicated that the word equipped means “furnished with.” What plaintiff ignores is that the focus must be on the “subject” which provides eligibility for the rebate. That is, whether the “rooms constituting the homestead” are equipped or furnished with bathroom and kitchen facilities, or whether it is the rooming house, itself, that must be equipped or furnished with kitchen and bathroom facilities.
Plaintiff also notes that the Director’s construction supports his position because plaintiff asserts that “the rooms constituting [his] homestead” include the common areas of the rooming house (including the shared kitchen and bathroom facilities) in addition to his “sleeping” room. This also is not persuasive. In the ordinary and normal acceptance, one does not consider common areas such as halls, stairways, elevators and lobbies in any rental dwelling, such as an apartment, as part of one’s *326 homestead. That term is reserved for those areas that are exclusively set aside for the individual resident. Clearly, on this point, the Director offers the only suitable construction.
Plaintiff, however, argues, in the alternative, that the proper meaning of a statute is not ruled by its strict letter, but must come from a “general view of the whole expression,” considering “its contextual setting,” statutes in pari materia and the nature of the subject matter. See Loboda v. Clark Tp., 40 N.J. 424, 435, 193 A.2d 97 (1963).
Plaintiff properly observes that the purpose of all the homestead rebate and credit legislation has been to provide property tax relief for permanent residents as opposed to seasonal or transient residents. Plaintiff also correctly notes that a review of the legislative history of the current and prior acts demonstrates that the Legislature imposed the kitchen and bathroom limitation on rooming house residents because the Legislature perceived rooming houses to be transient or transitory living facilities. The prior property tax relief legislation bears this out. For example, the Tenants’ Property Tax Rebate Act, N.J.S.A. 54:4-6.3a, excluded from its operation “hotels, motels or other guest houses serving transient or seasonal guests.” Additionally, the tenant homestead credit in the now repealed N.J.S.A. 54A:4-3, provided that:
No tenant homestead credit shall be allowed for occupants of rooming houses, hotels or motels unless the rooms rented to the tenant are equipped with kitchen and bathroom facilities and unless such person is a permanent resident thereof. [Emphasis supplied]
Plaintiff then asserts that the reason rooming houses were grouped together with hotels and motels in the current provision at N.J.S.A. 54:4-8.58 was a result of the legislative concern that rebates not be provided to seasonal or transient residents. I find that I am in agreement with plaintiff’s view of the Legislature’s perception and concern. The difficulty arises when plaintiff takes the next step in his argument. He asserts that, due to the lack of affordable housing in this State, many New Jersey residents have now turned to rooming houses for more long-term or permanent housing.
*327 Plaintiff points to the fact that his residence at 10 High Street, New Brunswick was long-term and not transitory, and thus, he fits within the Legislature’s concern for permanent residents and was intended by the Legislature to be a recipient of a rebate.
Plaintiff’s final step is wide of the mark. Although the Legislature expressed its intent to provide rebates for permanent residents as opposed to transient or seasonal residents, it did not establish eligibility requirements based on whether a particular individual was, in fact, a permanent resident of a rooming house or a transient. Instead, the Legislature, as readily asserted by plaintiff, perceived occupants of rooming houses exactly the same as occupants of hotels, motels or guest houses, i.e., as transitory in nature,[3] unless the “rooms constituting the homestead” were “equipped with separate kitchen and bathroom facilities.” The limiting provision was inserted to insure an objective measure of permanency, and thus, comport with the legislative purpose of limiting the rebate to permanent or long-term residents. There is nothing in the act which indicates otherwise.[4]
Plaintiff also suggests, citing the Tax Court opinion in Mills v. East Windsor Tp., 176 N.J.Super. 271, 1 N.J.Tax 178, 422 A.2d 819 (Tax Ct.1980), that the homestead rebate provisions at *328 issue should be construed liberally. Thus, an appropriate interpretation of the provision at issue would be to permit the rebate if the rooming house at issue provided bathroom and kitchen facilities and these were used by nontransient rooming-house residents. I am not persuaded by this suggestion for two reasons.
The first is that our Appellate Division in reversing the Tax Court decision in Mills v. East Windsor, supra, observed that the rebate provisions are tax preference provisions, and therefore, are not to be construed liberally, but instead are to be strictly interpreted against those claiming the preference. MacMillan v. Taxation Div. Director, 180 N.J.Super. 175, 178, 434 A.2d 620 (App.Div.1981), aff'd o.b. per curiam, 89 N.J. 216, 445 A.2d 397 (1982). A strict construction of the relevant provision clearly supports the Director’s interpretation.
Second, if the Legislature had intended to provide homestead rebates to occupants of rooming houses, hotels and motels, if those facilities had available for use by the occupants a common kitchen and bathroom, the statutory language could have easily so provided. The limitation in N.J.S.A. 54:4-8.58 could have been phrased, “a rooming house, hotel or motel, if equipped with kitchen and bathroom facilities,” or “a rooming house, hotel or motel, if the rooming house, hotel or motel is equipped with kitchen and bathroom facilities.” The fact that the Legislature phrased the limitation as it stands demonstrates that the Director’s construction is proper and reasonable.
Plaintiff also invokes another principle of statutory construction in his effort to demonstrate the unreasonableness of the Director’s position. He cites Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 528-529, 197 A.2d 673 (1964), for the proposition that, in the interpretation of statutes levying taxes, one should not extend or enlarge the scope of the statute beyond the language used, and if there is doubt, that doubt must be strongly construed against the government and in favor of the citizen. See also Gould v. Gould, 245 U.S. 151, 153, 38 S.Ct. 53, 53, 62 L.Ed. 211, 213 (1917).
*329 Although plaintiff is correct that, when statutes levying taxes are in doubt, that doubt is resolved in favor of the citizen, the provision at issue does not levy a tax, rather, it creates a tax preference. Our Supreme Court observed the difference in Fedders Financial Corp. v. Taxation Div. Dir., 96 N.J. 376, 384-386, 476 A.2d 741 (1984), and related the manner in which each is to be interpreted. The Court, initially, recited the principle of statutory interpretation applicable to a taxing provision that is in doubt which doubt is not removed by legislative history. The Court directed that, in that instance, the statute should be construed in favor of the taxpayer. Id. at 385, 476 A.2d 741. When the taxpayer seeks a preference or an exemption, however, then the statute is to be construed narrowly and against the taxpayer. Id. at 386, 476 A.2d 741. Here, we are reviewing a tax preference provision and not a statute levying a tax, and thus, strict construction against the taxpayer is required. See MacMillan v. Taxation Div. Director, supra, 180 N.J.Super. at 178, 434 A.2d 620.
Plaintiff, next, asserts that the rule of statutory construction that requires that full effect should be given to every word used by the Legislature to avoid the conclusion that the Legislature used meaningless or superfluous language, also, supports his position. In this regard, plaintiff argues that if the Director’s construction of “residential rental property” in subsection b. of N.J.S.A. 54:4-8.58 (“Residential rental property”) is correct, i.e., a rooming house resident must have a separate kitchen and bathroom, then subsection b. is superfluous.
Subsection a. of N.J.S.A. 54:4-8.58 (“Residential rental property”) provides that residential rental property includes
a. any building or structure or complex of buildings or structures in which dwelling units are rented or leased or offered for rental or lease for residential purposes.
Plaintiff states, in his brief, that the majority of rooming-house units do not contain separate kitchen and bath facilities.[5] If that is so, then plaintiff sees no need for subsection b. in the *330 definition of residential rental property because residences that contain a full living unit with separate kitchen and bath facilities would fall within subsection a. This argument is also wide of the mark.
First, if one accepts plaintiffs unproven assertion that a majority of rooming-house units do not contain separate kitchen and bathroom facilities, then a minority must have such separate facilities. The provision limits the rebate to that minority. Second, plaintiff has already noted that the Legislature intended to reserve the rebate for permanent residences as opposed to transient or seasonal occupancies. Thus, the language including rooming houses, hotels and motels in subsection b. was to demonstrate that, although these would normally be considered transitory and ineligible for homestead rebates generally, if they satisfied the limiting condition of separate kitchen and bathroom facilities then they would be considered more in the nature of permanent residences, and thus, entitled to the rebate.
If the Legislature excluded the rooming-house provision altogether there would have been some question as to whether a rooming house, hotel or motel qualified under subsection a. of the “residential rental property” definition.
Plaintiff also contends that there is an inconsistency in defendant’s position because the Director has not extended his requirement of a separate kitchen and bath to traditional housing. Plaintiff asks that if two or more people share an apartment why does not the Director require that each claimant have a separate kitchen and bathroom? The answer comes readily to mind. There is no need for the limitation for traditional housing because there is inherent in such housing a measure of permanency which does not exist with the overall category of rooming houses, hotels and motels. The additional condition of a separate kitchen and bathroom imposed by the Legislature with regard to what is customarily regarded as transient housing assures a measure of permanency.
*331 As further support for the proposition that the Legislature did not intend rooming-house residents who shared kitchen and bathroom facilities to be eligible for rebates, the Director observes that the Legislature agreed with, and adopted, his interpretation.
The Gross Income Tax Act, enacted in 1976, contained a provision at N.J.S.A. 54A.-4-3, which permitted a residential tenant to obtain a credit against the gross income tax. That credit provision, however, excluded
... occupants of rooming houses, hotels or motels unless the rooms rented to the tenant are equipped with kitchen and bathroom facilities____ [N.J.S.A. 54A:4-3c.(4) ]
The Homestead Tax Relief Act also permitted residential tenants to take a deduction from taxable income under the gross income tax for a portion of their rent payment attributable to property taxes. N.J.S.A. 54A:3A-4. To be specific, N.J.S.A. 54A:3A-4a, in part, provided:
Each resident taxpayer whose homestead is a residential rental property as those terms are defined in ... this act, and who is entitled to a homestead credit for tenants pursuant to N.J.S. 51fA:lf-3 shall be allowed a deduction from taxable income for that portion of the rent constituting property taxes____ [Emphasis supplied]
As the Director notes, the definitions of “homestead” and “residential rental property” under the now repealed Homestead Tax Relief Act are identical to those in the current rebate act. Compare N.J.S.A. 54A:3A-2e.(2) with N.J.S.A. 54:4-8.58 b. and c. and N.J.S.A. 54A:3A-2i.(2) with N.J.S.A. 54:4-8.58 b.
The Director, in interpreting these provisions, has consistently taken the position that he has in this case, that a rooming-house resident must have a separate kitchen and bathroom to be eligible for the credit or deduction. This position was made known as early as 1984 in the July-August 1984 edition of State Tax News, a bi-monthly newsletter published by the Division of Taxation. See 13 State Tax News 96 (July-August 1984). The Director’s interpretation was again made known in the November-December 1985 issue of State Tax News. See 14 State Tax News 142-143 (November—December 1985).
*332 The Director also points to the general instructions to the 1985 New Jersey gross income tax resident return which limits the tax credit to living units that have separate kitchen and bathroom facilities. Additionally, the Director’s position was also reflected in a question-and-answer booklet prepared by the Division for use for 1985 gross income tax returns, and again, in a course book prepared by the Division for use by its training hotline agents in answering calls from the public.
The Director’s argument is two-fold. First, he contends that his contemporaneous construction of the statute with which the Legislature has not interfered over a period of time is proof that his interpretation conforms with Legislative intent, and thus, must be accorded great weight. See Body-Rite Repair Co. v. Taxation Div. Dir., 89 N.J. 540, 545-546, 446 A.2d 515 (1982). Second, the Director maintains that the Legislature was aware of his interpretation of the prior tax relief acts, and therefore, when the Legislature incorporated the identical language used in the repealed homestead rebate statutes, it adopted the Director’s interpretation. See Ford Motor Co. v. N.J. Dept. of Labor & Industry, 7 N.J.Super. 30, 38, 71 A.2d 727 (App.Div.1950), aff’d, 5 N.J. 494, 76 A.2d 256 (1950).
Plaintiff, in response, argues, first, that the principle of giving considerable weight to a contemporaneous construction of a statute by an administrative agency should only be applied when the statute at issue is “technical, doubtful, or obscure.” Our Supreme Court, however, has indicated that the Director’s “interpretation of the operative law is entitled to prevail, so long as it is not plainly unreasonable.” Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984); see also Commissioner v. Engle, 464 U.S. 206, 224, 104 S.Ct. 597, 608, 78 L.Ed.2d 420, 434 (1984) (with respect to federal tax law the choice among reasonable interpretations is for the Commissioner of Internal Revenue, not the courts). In light of the relevant legislative history of the tax relief acts and the language employed by the Legislature in the prior enactments and the statutes at issue, I find that the Director’s interpretation of the operative law is clearly reasonable.
*333 Second, plaintiff asserts that the re-enactment rule of statutory construction should be disregarded in this matter because the Director has not clearly demonstrated that the Legislature approved of his interpretation of the statute. Plaintiff cites Kingsley v. Hawthorne Fabrics, Inc., supra, as support for this assertion, but Kingsley does not provide the required support. Kingsley states that, if an agency interpretation:
... is inconsistent with the ordinary and primary meaning of the statutory language, it should be disregarded, despite the subsequent re-enactment of the statute, at least in the absence of a clear showing that the Legislature specifically considered the regulation and approved it in re-enacting the provision. [41 N.J. at 529, 197 A.2d 673]
The predicate for disregarding the legislative re-enactment and the Director’s interpretative gloss is the inconsistency of the Director’s interpretation with the ordinary and primary meaning of the statutory language. If there is inconsistency, then the Director must make a clear showing that the Legislature specifically considered the Director’s interpretation and approved it in re-enacting the provision. In this case, there is no reason to disregard the re-enactment rule because the Director’s interpretation is not inconsistent with the ordinary and primary meaning of the statutory language.
Moreover, in this case, there is every reason to believe that the Legislature adopted the Director’s interpretation. This was not a situation in which the Legislature merely amended some portion of a statute and re-enacted the balance leaving it open to question as to whether it truly considered any agency interpretations or regulations. In this case, the Legislature provided a comprehensive revision of legislative property tax relief provisions, and, in so doing, it repealed numerous preexisting homestead tax relief deductions and credits, tenants credits and homestead rebates. See L. 1990, c. 61, § 19, effective January 1, 1991.
The Legislature had to be acutely aware of the Director’s interpretation at the time it enacted the current Homestead Property Tax Rebate Act of 1990, especially, in light of the publicity that the homestead rebate and tenant credit provisions had been receiving, and the legislative concern for a major *334 overhaul of the existing enactments. Yet, no changes were suggested or made to the statutory provisions at issue here.
I conclude that when the Legislature, in fact, re-enacted the definitional provision at issue in this case, and it employed the identical language of the repealed definitional provision, it agreed with, and adopted, the interpretation of the language by the very agency charged with its administration. See Ford Motor Co. v. N.J. Dept. of Labor & Industry, supra, 7 N.J.Super. at 38, 71 A.2d 727 (“Where a statute has received ... a practical interpretation, and the statute as interpreted is reenacted, the practical interpretation is accorded greater weight than it ordinarily receives, and is regarded as presumptively the correct interpretation of the law.”); see also In re Estate of Gillmore, 101 N.J.Super. 77, 86, 243 A.2d 263 (App.Div.1968), certif. den., 52 N.J. 175, 244 A.2d 304 (1968), (“Where the Legislature amends a statute after it has been administratively construed, leaving intact the language, it may be inferred that the administrative interpretation has its approval.”); 2A Sutherland, Statutory Construction (4 ed. 1984), § 49.09 at 400-401.
II.

Did the Director’s interpretation constitute impermissible rule-making?

Plaintiff contends, citing Metromedia, Inc. v. Director, Div. of Taxation, supra, that the Director’s interpretation of the relevant statutory language constitutes the impermissible process of rule-making by ad hoc adjudication rather than through the promulgation of a regulation pursuant to the APA, N.J.S.A. 52:14B-4(d).
The Director’s response to plaintiffs claim, interestingly enough, also relying upon Metromedia, Inc. v. Director, Div. of Taxation, is that his interpretation of the relevant statutory provision was not disguised rule-making and that a regulation is unnecessary.
*335 Metromedia, Inc. v. Director, Div. of Taxation, supra, enumerates the considerations that must guide this court in determining if the Director’s interpretation in this case was equivalent to rule-making:
... if it appears that the agency determination ... (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. These relevant facts can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication. [97 N.J. at 331-332, 478 A.2d 742]
An examination of the above guidelines reveals that plaintiff’s argument must fail. The Director’s interpretation in this case, (1) is designed to operate both retrospectively and prospectively, (2) prescribes a legal standard that is clearly inferable from the statute’s enabling authorization, (3) was expressed previously as the Director’s policy or interpretation, (4) does not constitute a radical departure from a clear, past position on the identical subject matter, and (5) reflects an administrative policy interpreting the clear intent and purpose of the statute.
Additionally, as the Director appropriately observes, “the broad fact-finding and informational procedures typical of rule making are not warranted in this case.” See Airwork Ser. Div., etc. v. Director, Div. of Taxation, 97 N.J. 290, 301, 478 A.2d 729 (1984), cert. den. 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985).
In weighing these considerations, I conclude that the Director was not required to adopt a rule or regulation. As previously noted, the Director’s interpretation is readily inferable from the statutory language and is clearly reasonable. See Airwork Ser. Div. v. Director, Div. of Taxation, supra; R.H. Macy & Co., Inc. v. Director, Div. of Taxation, 77 N.J.Super. 155, 179- *336 180, 185 A.2d 682 (App.Div.1962), aff’d o.b., 41 N.J. 3, 194 A.2d 457 (1963).
III.

Must the class action question be decided?

In light of the foregoing determinations, there is no need to consider plaintiffs request to maintain this action as a class action on behalf of other rooming-house residents similarly situated throughout this State. Normally “the maintainability of a class action should be determined as soon as practicable after the commencement of the action.”[6] In re Cadillac V8-64 Class Action, 93 N.J. 412, 420, 461 A.2d 736 (1983); R. 4:32-2(a). At an early stage in the proceeding, a determination would have to be made on the maintainability of the action as a class action because, at that time, the crucial substantive questions would be both unexplored and unresolved. In this case, however, the converse is true, the substantive questions have been decided, and thus, there is no need to address the class action question.
In any event, the requested class action relief in this case is to provide members of the alleged class with a reasonable time within which to file homestead rebate applications with the Director which would be beyond the already established filing deadline of August 15, 1991. Again, in light of my decision, that is unnecessary.
I would be remiss, however, if I did not mention that there is some question as to whether plaintiff may maintain the present action as a class action. First, there is a lack of proof that a notice was filed with the Director on behalf of the class on or before the filing deadline of August 15, 1991. Second, it is *337 questionable as to whether such a filing, if timely, would satisfy the very specific requirements of N.J.S.A. 54:4-8.62.
I am aware of this court’s decision in American Trucking Association, Inc. v. Kline, 8 N.J.Tax 181 (Tax Ct.1986), aff’d 9 N.J.Tax 631, (App.Div.1987), in which the court permitted a class action to be maintained in a case involving a refund-of-taxes claim. American Trucking Association, however, was a unique situation in which all purported members of the class could have filed timely refund claims and the only issue giving rise to the refund claims was identical to all the alleged class members, i.e., the constitutionality of the taxing statute. In this case, a decision favorable to plaintiff on the main issue would not be dispositive of the claims of the purported members of the class and individual rebate applications would still have to be submitted to the Director.[7]
I am also aware of the Appellate Division decision in Ochsner v. Cranbury Tp., 8 N.J.Tax 330, 333-334 (App.Div.1986), in which the Appellate Division affirmed a denial of class action certification “because there was no evidence that any other member of the purported class of aggrieved taxpayers who plaintiff sought to represent had filed a timely tax appeal.”
The question is whether, in this type of tax case, one member of a purported class may seek to delay statutory filing requirements imposed upon each individual member of the alleged class. See N.J.S.A. 54:4-8.62. This becomes all the more problematic when the Legislature has specifically directed that the entire homestead rebate program be handled strictly in accordance with expeditious deadlines. See N.J.S.A. 54:4-8.66 (a claimant has only 30 days to appeal the Director’s denial of a rebate and the Tax Court is required to render a determination within 90 days from the date the appeal is filed). Drawing attention to the problem, however, is all I need do, at present.
*338 The Clerk of the Tax Court is directed to enter judgment affirming the determination of the Director of the Division of Taxation.

A representative of the Division testified at the hearing on January 24, 1992, that the Division did not have a policy of refusing to accept homestead rebate *321 applications from any specific group of applicants. The representative did, however, indicate that if an individual, in the process of submitting an application, were to relate to the Division that the individual was living in a rooming house without separate kitchen and bathroom facilities, the Division would advise the individual that he or she was not qualified for the rebate, but would not prevent the individual from filing the application. There was no evidence adduced at the hearing on January 24, 1992 that the Division had refused to accept any homestead rebate applications.

Although plaintiff maintains that a notice was delivered to the Director on August 15, 1991, there is nothing in the record to support this. Plaintiff did not provide any proof on this point at the hearing on January 24, 1992. Although the time for offering proof has closed, as part of the Director’s brief submitted after the hearing, the Director offered the certification of the executive assistant to the Director who has the duty of examining and reviewing incoming mail to the Director's office. The certification indicates that plaintiff s notice was not received by the Director.
In response, as part of his brief, plaintiff offered the certification of the executive secretary for the Community Health Law Project. This certification recites that the notice was sent to the Director on August 14, 1991 by giving it to United Parcel Service (UPS) by means of UPS’ overnight mail.
Copies of the mailing slips and the delivery service bill were attached to the certification. Nothing reflects delivery on August 15, 1991. There is no presumption of due receipt by a specific date of a notice sent by UPS. In any event, there was no proof offered on this subject at the trial on January 24, 1992.

The principle of noscitur a sociis clearly supports this. The legislative perception of a rooming house as transitory is drawn from the words with which the term is associated, i.e., hotels, motels and guest houses. See Germann v. Matriss, 55 N.J. 193, 220-221, 260 A.2d 825 (1970) and Black's Law Dictionary (5 ed. 1979) at 956.

plaintiff, relying upon the Rooming and Boarding House Act of 1979, N.J.S.A. 55.-13B-1 et seq., urged this court to draw a distinction between rooming-house residents as primarily long-term residents and hotel guests who are normally transient residents. Plaintiffs apparent purpose was to show that his residence is perceived by the Legislature as long-term, and thus, eligible for the claimed rebate. The nature, purpose and objects of the boarding house act, however, are so different from those of the tax preference provision in the homestead rebate act that the two enactments cannot be considered in pari materia, and the former statute affords no light on the proper construction of the latter.

There is no proof in the record to support or to controvert this assertion.

PIaintiff filed his complaint on November 15, 1991. In view of the legislative time constraints in this matter, see N.l.S.A. 54:4-8.66 (requiring the Tax Court to decide these cases within 90 days of the filing of the complaint), plaintiff should have made this court aware of the proposed class action as soon as possible by making an appropriate motion. Plaintiff never filed a motion seeking class certification.

The case of Fiore v. Hudson Cty. Emp. Pension Comm’n, 151 N.J.Super. 524, 377 A.2d 702 (App.Div.1977), cited by plaintiff, is not relevant because it does not deal with whether timely claims could have been filed by all members of the purported class at the time the class action was certified.