NUGENT, J.T.C.
This matter which was the subject of a trial, involves defendant’s determination to decrease plaintiffs 2006 through 2009 benefits received from the property tax reimbursement program, N.J.S.A. 54:4-8.67 to 8.82 (“Senior Freeze Act”),[1] to 50% of the total available to him based on a finding that plaintiff owns a multi-dwelling property and occupies 50% of the property as his principal residence. New Jersey’s Senior Freeze Act provides property tax reimbursement (PTR) to senior citizens as a means of affording them relief from rising property taxes by “freezing” their property taxes at the amount paid in the base year. Ibid.
Plaintiff timely filed PTR applications concerning his property located at 242 Hancock Avenue, Jersey City (“property” or “dwelling”) for tax years 2006, 2007, 2008 and 2009. In 2009, defendant requested information regarding plaintiffs 2007 PTR application; a request with which he complied. After reviewing the documentation defendant determined that the property was a multi-unit dwelling and that plaintiff occupied 50% of the home as his principal residence. In a letter to plaintiff, defendant wrote that “for the purposes of the Property Tax Reimbursement, applicants who own property which contains multiple dwelling units will receive a reimbursement calculated using their prorated gross property tax based on the percentage of property they occupy as their principal residence.” Plaintiffs request for 100% of the PTR benefit for tax years 2006 through 2009 was denied. The defendant adjusted plaintiffs 2006 and 2007 PTR claims by 50% and he was notified of his entitlement to a 50% PTR benefit with the checks received for 2008 and 2009.
Plaintiff contends that the Director erred in his determination because he lives alone in the residence, built as a single-family *311 house with an additional kitchen, and he maintains that the Senior Freeze Act does not adequately define what constitutes a “dwelling unit.” Plaintiff filed complaints with the Tax Court disputing the determination which proceeded to trial.[2] Based on the evidence adduced at trial, the court finds that the subject property is a two-family house and that plaintiff occupied one unit as his primary residence during the relevant time period. The determination by defendant to prorate plaintiffs gross property tax based on the 50% of the property occupied by plaintiff as his principal residence is therefore affirmed.
The subject property is a multi-story residential dwelling which contains three floors and a basement area. A stairwell located inside the front entrance to the house provides separate access to each of the three floors.[3] At trial plaintiff presented an “Application for Building Permit,” dated November 1963, as proof that the dwelling was originally constructed as a one-family house. Notably, the building permit lists the “present occupancy” as a one-family house containing a total of eleven rooms and two baths. The “proposed occupancy” is as a two-family house, first and *312 second floors each with a kitchen, a living room, and two bedrooms. In testimony plaintiff explained that he had purchased the dwelling in 2001, described by him as “uninhabitable” at the time. He hired contractors to “convert the house back to a single family dwelling” but no structural work was undertaken. Contractors installed a new heating system, pipes, sinks, and floors. According to plaintiff, appliances were replaced in one kitchen, while the second kitchen “remained functional.” Plaintiff admitted that the Certificate of Occupancy (“CO”) continues to reflect that the property is a two-unit dwelling and that “the CO is what counts in terms of how many dwelling units exist,” but maintains that the house is a single-family house with an added kitchen. Plaintiff contends that the central staiiway design is a common architectural practice, which allows the occupant to heat less space and to allow more privacy.
In support of the determination that the subject is a multi-unit dwelling, defendant produced Meg Jones, a representative of the Division of Taxation for the last twenty-three years, as its witness. She located an on-line advertisement during her research of the subject property undertaken to discover a rental history. The advertisement stated in part: “My father and I are friendly, but busy people. I live on the second floor of the house and he lives on the first floor. We will be happy to help you get to know the area.” The ad noted “last updated on September 25, 2008.” Defendant questioned plaintiff about the statement in the advertisement, and his testimony that the property is a single-family house. He explained that his daughter’s characterization of the property and living arrangements in the on-line document was not accurate as the property is in fact a single-family house.[4] Plaintiff countered that he never rented any portion of the subject property nor did he advertise it for rent.[5] He amended his prior *313 testimony to state that an individual lived in a room on the third floor for a short time but did not pay rent, and he acknowledged that his daughter lived there from 2004 through 2009. Plaintiff contends that he and his daughter occupied the entire dwelling and shared all of the areas.
The Jersey City deputy tax assessor, Michelle Hennessey, testified on defendant’s behalf that the property tax records list the subject as a two-family home. An assessing aide employed by the Office of the Jersey City Tax Assessor, Kevin Kelty, inspected the property on two occasions during the relevant time period and completed inspection reports. The reports were prepared on forms regularly utilized by the city for such purposes. With the inspector unavailable to testify at trial due to a workplace injury, defendant sought to admit the substance of the reports into evidence through the deputy assessor. Plaintiff objected to the reports based on his belief that they contained inaccuracies. He recalled being present with the inspector on at least one of the two inspections of his property, and identified his own initials which appeared at the bottom of each of the two reports. Through his testimony, plaintiff established that the only relevant discrepancy between the plaintiffs description of the structure and the inspection reports was a one-room difference in the total room count of the structure. The court accepted the reports into evidence.[6]
The inspector’s first visit to the subject premises, on April 9, 2007, was a result of plaintiffs appeal of the property’s assessed value, through a Petition of Appeal filed with the Hudson County Board of Taxation (“Tax Board”) in March 2007. The inspection *314 report notes a two and one-half story frame building with two dwelling units and a basement area. Each of the first two floors contains a living room area, dining room, two bedrooms, a kitchen and a bathroom.
Subsequent to plaintiffs appeal of the PTR determination, the defendant requested an inspection of the subject property on December 7, 2010. The second inspection resulted in the same finding of two separate dwelling units, both constituted in the same manner as described in the April 2007 inspection report.
Plaintiff’s Petition of Appeal was produced by defendant. The addresses of four, two-family houses, identified as properties comparable to the subject property, and indicative of value, were listed on plaintiffs attachment to the petition. Addressed to the attention of the Tax Board, the document reads, “[T]he purpose of this Appeal is to have the property assessed at a percentage of sale price comparable to similar homes in my neighborhood. I have taken homes with the same or less stories as my property, rated at 2 units and so like my property.”[7]
For its purposes, the assessor’s office relies on the description of “dwelling unit” as defined in the City’s ordinance. “Dwelling unit” is defined by Jersey City Ordinance 345-6 as, “[a] room or series of connected rooms containing living, cooking, sleeping and sanitary facilities for one housekeeping unit. The ‘dwelling unit’ shall be self-contained and shall not require the use of outside stairs, passing through another dwelling unit or other indirect route to get to any portion of the dwelling unit, nor shall one dwelling unit require shared facilities with another dwelling unit.” Based on the results of the inspection, the City classified the property as a two-unit dwelling because it contained two separate, self-contained dwelling units, each with its own “living, cooking, sleeping and sanitary facilities.”
*315 By letter dated May 5, 2009, defendant informed the plaintiff that because the subject property is assessed as a two-unit dwelling, he is entitled to a PTR proportionate to the percentage of the property in which he resides; in other words, 50%. Defendant’s determination was made in reliance on local property information obtained by the State and was based on the conclusion that the premises consists of two separate self-contained dwelling units, as described in the city’s ordinance.
The evidence produced by both parties establishes that the separate living facilities on the first floor and the second floor each minimally contain a kitchen, bedrooms, and a bath [8] and that each constitutes a dwelling unit. The court concludes that it is unnecessary to ascertain whether the definition of dwelling unit set forth in the Jersey City Ordinance applies to the subject property, as plaintiffs own statements and proofs indicate that the property is a two-unit dwelling. Despite plaintiffs contention that the property is a single-family house, his own statements and the evidence prove otherwise. Plaintiff testified that he hired contractors to “convert the house back to a single family dwelling,” by which he acknowledged his understanding that the house was a multi-family residence. He admitted that no structural work to the home had been undertaken. Plaintiff conceded that the CO continues to reflect that the property is a two-unit dwelling and that the description in the CO is controlling. Finally, plaintiffs 2007 tax appeal petition notes that he used two-family units as comparable properties because of his belief they are similar to his property.
Plaintiff testified that, at the time of trial, he lived alone in the residence. He contends that he alone cannot constitute two families; therefore, the property must be a one-family home. However, this reasoning is flawed. Logic dictates that if plaintiff *316 owned a multi-family building with four apartments and he lived in one of the apartments, while the other three were vacant, this building would not be considered a single-family home—it would be considered a multi-family building with vacancies. As such, simply because plaintiff lives alone in his residence does not make it a single-family residence.
As noted, among the property relief statutes, the Senior Freeze Act provides to senior citizens a means of relief from rising property taxes by “freezing” their property taxes at the amount paid in the base year. The base year is defined as the year in which the person first becomes an eligible claimant. N.J.S.A. 54:4-8.67. A PTR is defined as the
payment of the difference between the amount of property tax or site fee constituting property tax due and paid in any year on any homestead, exclusive of improvements not included in the assessment on the real property for the base year, and the amount of property tax or site fee constituting property tax due and paid in the base year, when the amount paid in the base year is the lower amount; but such calculations shall be reduced by any current property tax resulting from judgments entered by county boards of taxation or the State Tax Court.
[N.J.S.A. 54:4-8.67.]
Having determined that the plaintiffs residence is comprised of two units, the court must examine whether the defendant’s determination to reduce plaintiffs PTR benefit was correct. A plaintiff challenging the Director’s decision has the burden of providing sufficient evidence to overcome the presumption that attaches to the decision. “Courts have recognized the Director’s expertise in the highly specialized and technical area of taxation.” Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J.Tax 584, 589 (Tax 1997) (citing Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984)). The scope of judicial review of the Director’s decision with respect to the imposition of a tax “is limited.” Quest Diagnostics, Inc. v. Director, Div. of Taxation, 387 N.J.Super. 104, 109, 903 A.2d 442 (App.Div.), certif. denied, 188 N.J. 577, 911 A.2d 69 (2006). The Supreme Court has directed the courts to accord “great respect” to the Director’s application of tax statutes, “so long as it is not plainly unreasonable.” Metromedia, supra, 97 N.J. at 327, 478 A.2d 742. See also, Koch v. Director, Division of Taxation, 157 *317 N.J. 1, 8, 722 A.2d 918 (1999); GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306, 625 A.2d 468 (1993) (“Generally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing.”) Cf. New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575, 384 A.2d 795 (1978) (Deference to the Director is “not total, as the courts remain the ‘final authorities’ on issues of statutory construction and are not obliged to ‘rubber stamp’ their approval of the administrative interpretation.”)
The Senior Freeze, like the benefit afforded under the Homestead Property Tax Credit Act, N.J.S.A. 54:4-8.57 to 8.66 (“Homestead Credit Act”)[9], is considered a “tax preference provision ... not to be construed liberally, but instead ... strictly interpreted against those claiming the preference.” Vavoulakis v. Director, Div. of Taxation, 12 N.J.Tax 318, 328 (Tax 1992), aff'd, 13 N.J.Tax 322 (App.Div.1993). Where the homestead rebate statute is “outspoken and unambiguous” its terms must be strictly applied. MacMillan v. Director, Div. of Taxation, 180 N.J.Super. 175, 179, 434 A.2d 620 (1981), aff'd, 89 N.J. 216, 445 A.2d 397 (1982); see also Anderson v. Director, Div. of Taxation, 24 N.J.Tax 141 (Tax 2008).
Defendant agrees that plaintiff is entitled to a PTR; however, the point of contention between the parties is the amount of the PTR plaintiff is entitled to receive.[10] Defendant maintains that plaintiff’s residence is a multi-unit property and that he is therefore entitled to a proportionate share of the PTR. This appears to be a case of first impression.
*318 When construing a statute, the Court must “effectuate the intent of the Legislature.” Lesniak v. Budzash, 133 N.J. 1, 8, 626 A.2d 1073 (1993) (citing Merin v. Maglaki, 126 N.J. 430, 435, 599 A.2d 1256 (1992)). First, the court must examine the plain language of the statute to determine whether there is only one reasonable interpretation. Richard’s Auto City, Inc. v. Director, Div. of Taxation, 140 N.J. 523, 531, 659 A.2d 1360 (1995). In doing this, the words and phrases in the statute are given their common meanings unless the statute explicitly defines or indicates another special meaning. State v. Mortimer, 135 N.J. 517, 532, 641 A.2d 257, cert. denied, 513 U.S. 970,115 S.Ct. 440, 130 L.Ed.2d 351 (1994). If the statute is clear on its face, the court does not look beyond the terms of the statute to determine legislative intent. State v. Sutton, 132 N.J. 471, 479, 625 A.2d 1132 (1993).
In so doing, the court turns to an examination of the definitional section of the Senior Freeze Act at N.J.S.A. 54:4-8.67. A reading of the plain language reveals that the statute limits the property tax freeze to a “homestead” used as the “principal residence.” The term “homestead” is defined in the statute, in relevant part, as “a dwelling house and the land on which that dwelling house is located which constitutes the place of the eligible claimant’s domicile and is owned and used by the eligible claimant as the eligible claimant’s principal residence.” Ibid.
The statute defines “dwelling house” as any residential property assessed as real property which consists of not more than four units, of which not more than one unit may be used for commercial purposes, but shall not include a unit in a condominium, cooperative, horizontal property regime or mutual housing corporation. Ibid.
Lastly, the phrase “principal residence” as used in the statute “means a homestead actually and continually occupied by an eligible claimant as his or her permanent residence, as distinguished from a vacation home, property owned and rented or offered for rent by the claimant, and other secondary real proper *319 ty holdings.” Ibid.[11]
The Act provides a “homestead property tax reimbursement,” which is a reimbursement for property taxes on the homestead, defined in the statute as the “principal residence.” The issue raised by the director’s determination in this matter is whether the statutory language provides the benefit in proportion to the percentage of the dwelling actually occupied by a claimant as his principal residence where he is the owner of a multi-unit dwelling. The legislative language focuses on the dwelling as that “actually and continually occupied ” by an eligible claimant, which is occupied as his or her “permanent residence,” and provides examples which distinguish between a dwelling which constitutes the claimant’s permanent residence, from a dwelling which does not. Examples of dwellings which will not be considered for tax relief include a “vacation home,” “property owned and rented or offered for rent” and “other secondary real property holdings.” The statute limits the benefit to the dwelling actually occupied as the principal residence.
The Senior Freeze Act was enacted in 1997.[12] The legislative purpose was set forth as follows:
The homestead property tax reimbursement is intended to further the State’s interest in maintaining a diverse population through the preservation, continuity and stability of its low-income senior and disabled homeowners, who have contributed to the fabric, social structure and finances of New Jersey communities, by affording protection to those homeowners who may otherwise be forced to move out of State due to increasing property taxes.
[Assembly Senior Issues, Tourism and Gaming Committee, Statement to Assembly, No. 3 (with committee amendments), dated June 9,1997.]
I find that the PTR is conditioned on the “homestead [being] actually and continually occupied by an eligible claimant as his or her permanent residence,” and that the Director’s interpretation of the statute is not plainly unreasonable. Rather, it comports *320 with the overall purpose of the statute, which is designed to provide a senior citizen with a property tax freeze on the claimant’s principal residence to guard against the threat of rising property taxes.
The competent evidence at trial in this matter established that the plaintiff did in fact occupy the first floor of the two-unit dwelling during the relevant time period, and his daughter occupied the second floor. Plaintiff did not produce evidence contradictory to those facts, but rather, steadfastly argued, in spite of the facts presented, that the structure is not a two-family home but rather a one-family house with two kitchens. To provide claimant with a PTR benefit for the unit not actually occupied by him as his primary residence would exceed the bounds of the statute and the explicit intent of the law which is designed to allow a senior citizen to maintain his/her residence in the face of escalating taxes.
It is true that the beneficent purpose of the Senior Freeze is the provision of needed tax relief, yet clear restrictions on eligibility were carved out by the legislature, and entitlement to the benefit is subject to limitations, such as age, disability, income, residency, and actual occupancy. For this reason, the court can not permit a relaxation of the legislative mandate. As the court noted in MacMillan, supra, 180 N.J.Super. at 177-178, 434 A.2d 620:
[w]e remain judges and as such cannot succumb to the humanistic pressures or substitute our concern in place of the legislative design. Indeed, we may not even permit ourselves the luxury of liberal construction—or, as a matter of fact, any construction, if the words of the statute plainly convey the legislative intent ... [Restraint is particularly essential in tax matters. As the Supreme Court observed in Ridgefield Park v. Bergen Cty. Bd. of Taxation, 31 N.J. 420, 431 [157 A.2d 829] (1956), ‘The judiciary has no power to devise tax programs or to qualify the existing legislative mandate with a judge’s private view of what is just or sensible.’ This is because of the essentiality of the taxing role in government. The taxing power lies at the heart of government. Without taxes government could not function. Any impairment of the taxing power affects the lifeblood of government. N.J. Turnpike Auth. v. Washington Tp., 16 N.J. 38, 44 [106 A.2d 4] (1954).
As such, I find that the statute affords a property tax freeze to the owner’s homestead or dwelling house actually and continually occupied as the claimant’s permanent residence, which in this case is the one unit occupied by plaintiff.
*321 Defendant raised a farther argument in support of the Director’s statutory application which warrants additional consideration by this court.[13] Specifically, defendant relies on a provision contained in the Homestead Credit Act, which allows a property tax benefit in relation to the proportionate share of the property taxes assessed and levied against the residential unit occupied as the principal residence of a claimant where the residence is a multi-unit dwelling. N.J.S.A 54:4-8.59(d) provides:
[I]f the homestead of a claimant is a residential property consisting of more than one unit, that claimant shall be allowed a homestead rebate or credit pursuant to this section only in relation to the proportionate share of the property taxes assessed and levied against the residential unit occupied by that claimant, as determined by the local tax assessor.
IN.J.S.A. 54:4-8.59(d)l
Defendant contends that N.J.S.A. 54:4-8.59(d) should be read in pari materia with N.J.S.A. 54:4-8.67 et seq., Senior Freeze Act, to reduce the amount of the property tax freeze allocated to plaintiff, as the owner of a two-unit dwelling. Canons of statutory interpretation are only applicable where there exists an ambiguity or vagueness in the words of the statute, and the legislature’s intent cannot be discerned. This court declines to apply the doctrine since I find that the plain language of the statute is sufficient to resolve the issue.
Defendant’s determination to reduce plaintiffs property tax reimbursement to 50% of the total available to him based on a finding that plaintiff owns a two-family dwelling and occupies 50% of the property as his principal residence is affirmed.

 The Act affords the benefit to disabled residents of the State and to senior citizens. Plaintiff is qualified as a senior citizen. The court will therefore refer to the statute as the "Senior Freeze Act” for the purposes of this opinion.

 Plaintiff filed several pre-trial motions, including a “Motion to Join the Docket” which the court converted to a Motion to Consolidate. The 2009 and 2010 complaints, which covered plaintiffs PTR benefit years 2006 through 2009, were thereby consolidated. At the parties’ request the court extended the time for discovery and the parties exchanged interrogatories and demands for documents. In response to plaintiff’s "Motion to Amend docket number 015539-2009” to increase the amounts demanded in his complaint, defendant filed an amended Answer to the Complaint. That motion however was denied, in part, to the extent plaintiff included therein a request for summary disposition of the complaints. The subject of another motion, defendant sought a copy of plaintiff's federal tax returns on the basis that a PTR applicant’s income is broadly determined by the “Pharmaceutical Assistance to the Aged” (“PAAD”), under N.J.S.A. 54:4-8.67. Social security benefit income is included in determining income for PAAD programs, therefore, requiring defendant's review of the federal tax returns. The court converted plaintiff's "Motion to Substitute Proper Answer to Improper Interrogatory Question” instead to plaintiff's objection to the request for the federal tax returns. Plaintiff produced the federal tax returns as ordered by the court. Plaintiff's second dispositive motion, "Motion Requesting a Judgment on the Merits of the Case” was denied and the matters proceeded to trial.

 A second doorway from the street provides access to the basement.

 The court admitted the document into evidence over plaintiff’s relevancy objection.

 Plaintiff recalled in testimony that he had inquired whether the town would allow a basement rental and when advised that it was impermissible made no further attempt to rent the space.

 Plaintiff testified that he had previously received the reports as attachments to defendant's answers to interrogatories. He filed a "Motion to Strike Answer to Interrogatory" wherein plaintiff sought to strike Mr. Kelty's certified answers to interrogatories based on the contention that they contained factual errors. The court denied the motion. In his testimony, plaintiff explained that the reports contain observations by the inspector with which he disagreed, including descriptions of the exterior wall surface, materials applied to the kitchen, general condition of the property as classified by the inspector, the roof angle, and others, none of which are relevant to this court's decision. Plaintiff also objected, in part, to the room description used by the assessor in his report, as discussed infra.

 In plaintiff's "Motion to Strike Answer to Interrogatory” he explained that he “simply used two units as comparable measure for taxes assessed in accord with the erroneous decision of Tax Assessor that it was 2 units.”

 Plaintiff agreed with the inspector’s room count for the first floor but ascribed the term "sun room” to the "dining room” noted in the report. He further agreed with the room count included by the inspector as to the basement and the third floor. Plaintiff contends that the inspector’s second floor description was incorrect as the property contains only a kitchen, bath and two bedrooms, without a living room or dining room.

 The Homestead Credit Act is a corollary statute that provides to residents a rebate or credit related to property taxes with "the beneficent purpose of alleviating the heavy realty tax burden." Rubin v. Glaser, 166 N.J.Super. 258, 399 A.2d 984 (App.Div.1979), aff'd, 83 N.J. 299, 416 A.2d 382 (1980) (then known as the "Homestead Rebate Act," N.J.S.A. 54:4-3.80.)

 Defendant does not dispute plaintiff's status as an otherwise eligible claimant since plaintiff is 65 years of age or more, the owner of a "homestead" whose income falls within the limited statutory range, and who has paid New Jersey property taxes for at least ten years, three of which have been as the owner of the subject homestead. N.J.S.A. 54:4-8.67.

 These terms and definitions are nearly identical to those contained in the Homestead Credit Act at N.J.S.A. 54:4-8.58.

 L. 1997, c. 348 (C. 54:4-8.67). Eligibility requirements have been adjusted through various legislative amendments, L. 2001, c. 251; L. 2008, c. 119; L. 2009, c. 129.

 Defendant’s contention was included in a footnote contained in a post-trial submission to the court.