NUGENT, J.T.C.
This matter brought before the court on cross-motions for summary judgment presents a question of statutory interpretation. Specifically, whether regulation N.J.A.C. 18:7-1.15 enacted by the Division of Taxation (“Division”) to qualify an “investment company” constitutes a reasonable interpretation of N.J.S.A. 54:10A-4(f), a provision of the New Jersey Corporation Business Tax Act (CBT), N.J.S.A. 54:10A-1 to 41. The Division denied taxpayer’s election as an investment company based on taxpayer’s failure to meet the deduction test, one part of the three-pronged business test set forth in the regulation. Taxpayer contends that promulgation of the deduction test constituted overreaching by the agency. The court finds the regulation amounts to a reasonable interpretation of the CBT and grants summary judgment in the *582 Division’s favor. The cross-motion for summary judgment is denied.
Regent Corporation of Union, Inc. (“Regent”) is the taxpayer. The nature of Regent’s corporate operations and the facts of the case are undisputed. M. Murray Mantell (“Mantell”) began operating a retail home furnishing business as a sole proprietorship in 1946. In 1981, Mantell elected to incorporate the retail business and formed Regent.[1] As its sole employee and shareholder, Mantell was paid a salary and the corporation contributed to certain qualified retirement plans for Mantell. Regent also made contributions to an I.R.C. § 105(h) medical reimbursement plan on the employee’s behalf. Other corporate earnings were used to purchase marketable securities in Regent’s name which paid interest and dividends.
In 1999, Mantell was unable to continue successful operation of the corporation and retired due to his age and deteriorating health. Regent did not seek a replacement for its employee. The company continued to collect outstanding accounts receivable from sales made during its period of retail operations and to file tax returns as a corporate entity. The accounts receivable and investment securities defined Regent’s assets for the period after Man-tell’s retirement.
As required, Regent accounted for its income and expenses on its tax returns. As a cash-basis taxpayer, it recognized income from its retail sales upon collection of the cash payments, not when actual sales were made. For the tax years at issue, 2008, 2004 and 2005, these collections amounted to $5,641, $3,433, and $1,431. It also received cash from dividends, interest, and security sales or maturities, of $50,842, $51,973 and $72,881 for those same years. Regent listed zero salary and wages, but continued *583 to incur various expenses during this period which included taxes, legal and professional, and Director fees, among others.
Somewhere around 2001, Regent began filing its federal income tax returns as a personal holding company (I.R.C. § 541), however, the company continued to file its New Jersey business tax returns without electing any special tax treatment. On its originally-filed New Jersey tax returns for 2003, 2004, and 2005, Regent calculated its tax liability in the same manner as it had as the retail business. In August 2006, Regent amended the returns for two reasons, to correct the exclusion of certain dividend income and to elect tax treatment as an investment company. It continued to describe the type of business as “sales” with “home furnishings” as the principal products handled.
Regent deducted expenses on its tax returns. Two deductions are particularly relevant. For each year at issue, Regent deducted $6,000 for a rent expense paid to Mantell and his wife for utilization of office space at their home. Likewise, Regent deducted yearly payments of $9,210, $8,348, and $15,510 for the medical reimbursement plan established for Mantell. When it filed the amended returns, Regent recalculated its franchise tax liabilities and claimed a “net tax credit” of $1,643.
After it filed the amended returns, correspondence was exchanged between the Auditor of the Division’s Corporation Tax Refund Section (“Auditor”) and Bruce E. Mantell, Mantell’s son. The letters concerned Regent’s tax filings and whether the information provided was sufficient to meet the three-part business and asset test set forth in N.J.A.C. 18:7-1.15, a requirement for any entity that elects treatment as an investment company. Bruce E. Mantell, acting as Regent’s accountant, wrote to the Auditor:
The Taxpayer is in receipt of your letter dated August 29, 2006, a copy of which is enclosed for your reference.[2] The accompanying Chart I and Chart II reflect that the Income Adjusted Test, Income Unadjusted Test, and Asset Test are met.
The Deduction Test is also met because all deductions were incurred pro rata to the Gross Income of the Regent Corporation of Union, Inc. (the “Corporation”).
*584 Therefore, 90% or more of the total deductions are for holding, investing and reinvesting in cash and/or investment-type assets.
Chart I set forth the percentage of income from investments as 90% in 2003, 93.8% in 2004, and 98% in 2005. For all three years, Regent held only investment assets.
By letter dated November 15, 2006, the Auditor advised Regent that not all parts of the three-part business test had been met and denied the requested credits.
While you do meet the 90% Income Adjusted and Unadjusted tests, and the Asset Test, you do not meet the 90% Deductions Test. Deductions for this test cannot be Pro Rata to income, but must be incurred directly for holding, investing, and reinvesting in cash and/or investment type assets. Rent expenses and Employee benefit program expenses do not meet this requirement. (Emphasis in original.) [3]
Mantell’s son forwarded correspondence dated May 17, 2007 challenging the decision.[4] The Auditor notified Regent that, after review of that letter, the Division’s determination denying status as an investment company “remains the same.” The Auditor further advised that the taxpayer could request an administrative hearing using the procedure attached. A hearing was conducted via telephone in September 2007, which Mantell and his son attended, that resulted in a Conference Report issued by the Acting Conferee. By final determination issued June 11, 2010, the Director denied Regent’s election as an investment company, denied Regent’s requested credits, and found that a tax liability existed in the amount of $4,890.
In its motion for summary judgment, the Division asserts that the facts are not in dispute and that Regent acknowledged it failed to meet the deduction test. According to the Division, following the administrative process, the Acting Conferee concluded that the rent expense was not a qualified investment expense pursuant to the language of N.J.A.C. 18:7-1.15(e) and the employee benefit *585 expense was likewise disallowed as unrelated to a qualified investment activity.
Regent has not raised a factual challenge or disputed the Division’s interpretation of the regulation memorialized in the Director’s final determination denying Regent investment company status. Rather, Regent urges this court to find that, in enacting the deduction test, the Division exceeded the bounds of the statutory language and engaged in impermissible overreaching having interpreted the CBT in a manner that affords it greater effect than the statutory language allows. Regent’s position is that, once a corporation establishes that at least 90% of its gross income derives from investment sources, the statutory requirement that the corporation’s “business” consist of investment activities is met. Regent reasons that such comprehensive regulation could not be a reasonable interpretation of a statute comprised of only one lengthy paragraph. Further, it points to the fact that considering deductions might disqualify a company for the tax preference one year but not the next as evidence the deduction test is arbitrary and capricious.
The Division asserts the agency had full authority to promulgate the regulation and its interpretation of the statute is entitled to prevail if not plainly inconsistent with the manifest intent of the Legislature. It argues further that courts have a limited role when evaluating the validity of state administrative regulations. According to the Division, the Legislature utilized the broad term “business” to define an investment company, and the deduction test as a measure of business activities is consistent with the statutory language and the legislative history of the amendment.
The motion papers reveal the particular points over which the parties agree and disagree. For each year at issue, the following key facts are undisputed: 1) Regent held at least 90% of its average total assets in cash or investments; 2) Regent derived at least 90% of its gross income from cash or investment assets; 3) the amount of Regent’s deduction for rent exceeded 10% of its total deductions; 4) the amount of Regent’s deduction for employee benefits exceeded 10% of its total deductions. Thereby, tax *586 payer accepts the validity of the asset test and parts I and II of the business test, but challenges the agency’s authority to enact the deduction test.
The “investment company, ” as defined by N.J.S.A. 5J¡.:10A-U(f)
The CBT imposes tax against all for-profit corporations at progressive rates. The rate is multiplied by 100% of the corporation’s tax base. Investment companies, however, receive preferential tax treatment under the CBT and pay tax on only 40% of their tax base, which amounts to a 60% tax reduction.[5]
When it was initially enacted in 1945, the CBT granted preferential tax treatment to “regulated investment companies” only. L. 1945, c. 132, § 5. The statute defined a regulated investment company as, “any corporation which, for the period covered by its report, is registered and regulated under the Investment Company Act of 1940 (54 Stat. 789) and meets the requirements of and is taxable under ‘Supplement Q’ of the Internal Revenue Code.” As such, only investment companies subject to federal regulation qualified for the tax preference.
In 1947, at the recommendation of the Commission on State Tax Policy, the Legislature amended the CBT to permit non-regulated investment companies to receive special tax treatment as well.[6] Corporations that fit within the new statutory definition of “investment company” were eligible for the tax preference. “Investment company” was defined as:
*587 [A]ny corporation whose business during the period covered by its report consisted, to the extent of at least ninety per centum (90%), thereof of holding, investing and reinvesting in stocks, bonds, notes, mortgages, debentures, patents, patent rights and other securities for its own account, but this shall not include any corporation which: (1) is a merchant or a dealer of stocks, bonds and other securities, regularly engaged in buying the same and selling the same to customers; or (2) had less than ninety per centum (90%) of its average gross assets in New Jersey, at cost, invested in stocks, bonds, debentures, mort[g]ages [sic], notes, patents, patent rights or other securities or consisting of cash on deposit during the period covered by its report; or (3) owned more than ten per centum (10%) of either the aggregate outstanding shares of capital stock of all classes entitled to vote, or of the aggregate outstanding shares of nonvoting capital stock of any other corporation, during the period covered by its report.
L. 1947, c. 50, § 4(f).
Between 1947 and the present, the Legislature twice amended the definition of “investment company” contained in the CBT.[7] Presently, the statute reads:
[A]ny corporation whose business during the period covered by its report consisted, to the extent of at least 90% thereof of holding, investing and reinvesting in stocks, bonds, notes, mortgages, debentures, patents, patent rights and other securities for its own account, but this shall not include any corporation which: (1) is a merchant or a dealer of stocks, bonds and other securities, regularly engaged in buying the same and selling the same to customers; or (2) had less than 90% of its average gross assets in New Jersey, at cost, invested in stocks, bonds, debentures, mortgages, notes, patents, patent rights or other securities or consisting of cash on deposit during the period covered by its report; or (3) is a banking corporation, a savings institution, or a financial business corporation as defined in the Corporation Business Tax Act.
N.J.S.A. 54:10A-4(f).
In sum, an investment company is defined as a corporation whose business consists of at least 90% investment activities. Certain companies, regardless of their corporate activities, are explicitly disqualified.

The regulation, N.J.A.C. 18:7-1.15

When it enacted the CBT, the Legislature authorized the Director of the Division of Taxation to promulgate rules and regulations interpreting the statute’s provisions. L. 1945, c. 162, § 28. In 1959, the Division exercised this power for the first time and *588 interpreted the definition of “investment company” contained in N.J.S.A. 54:10A-4(f) by simply repeating the statutory language.
The regulation interpreting N.J.S.A. 54:10A(4)(f) was substantially amended in 1982. Pursuant to the new regulation, to fall within the statutory definition of an “investment company,” a corporation must satisfy a three-prong “business test.” The test’s first two prongs require that the corporation “derived 90% or more of its total income ... from investment type assets.” Both adjusted and unadjusted income are considered. To satisfy the third prong, dubbed the “deduction test,” at least 90% of the corporation’s deductions must have been incurred for investment related activities.
The asset qualifier contained in the statute remains and was converted to an “asset test” in the regulation. The burden is on the taxpayer to show it satisfies each prong of the business test. N.J.A.C. 18:7-1.15(e) (The taxpayer “shall substantiate its claim in accordance with the test enumerated in this rule. Where the taxpayer does not clearly document its claim to investment company status through attached riders, the claim will be denied.”). The regulation reads, in relevant part:
(a) “Investment company” means any corporation:
1. Whose business for the period covered by its return consisted to the extent of at least 90 percent of “qualified investment activities” which are: investing or reinvesting in stocks, bonds, notes, mortgages, debentures, patents, patent rights, and other securities or the holding thereof after investing or reinvesting therein for its own account. As used in this rale, “qualified investment assets” are stocks, bonds, notes, mortgages, debentures, patents, patent rights, publicly traded limited partnership or limited liability company interests and other securities and cash on deposit;
2. Which had for the period covered by the return 90 percent or more of its average gross assets in New Jersey, at cost, invested in “qualified investment assets” referred to in (a)l above;
3. Which meets the numerical tests in (f) below;
4. Which is not a banking corporation as defined by the Act;
5. Which is not a financial business corporation as defined by the act; and
6. Which is not a merchant or dealer in stocks, bonds, or other securities, and which is regularly engaged in buying and selling such securities to customers.
(b) “Qualified investment assets” are measured by the taxpayer’s assets as reported for book purposes at cost on a separate legal entity basis for balance sheet purposes. “Qualified investment activities” are measured by gross receipts *589 and expenses as reported for Federal income tax purposes, and by adding thereto, Federal, state, municipal and other obligations including in determining New Jersey net income, but not otherwise included in Federal taxable income. “Qualified investment activities” and “qualified investment assets” do not include the following specific assets or activities. The receipts, direct and indirect expenses and assets connected with the following will not be included in the numerator of any test:
2. The renting or leasing of real or tangible personal property. These activities are generally considered financial business activities other than investment activities;
(e) A corporation electing to file as an investment company shall make its election on a timely filed original return or on a timely filed amended return, and shall substantiate its claim in accordance with the test enumerated in this rule. Where the taxpayer does not clearly document its claim to investment company status through attached riders, the claim will be denied.
(f) In order for a corporation to qualify as an investment company, it must meet the three-part business test and the asset test:
1. Business test (three parts):
1. (Income adjusted): For purposes of the 90 percent requirement provided by (a)l above ...
ii. (Income unadjusted): For purposes of the 90 percent requirement provided by (a) above ...
iii. (Deductions): For purposes of the 90 percent requirement provided by (a) above, taxpayer, during the entire period covered by its report, must have incurred 90 percent or more of its total deductions as reported for Federal income tax purposes, for holding, investing and reinvesting in cash and/or investment assets.
2. Assets test: For purposes of the 90 percent requirement provided by (a)2 above, at least 90 percent of the taxpayer’s gross assets located in New Jersey, valued at cost, must consist of cash and/or investment assets, during the period covered by its report.
N.J.A.C. 18:7-1.15
The Director’s final determination in this matter denying Regent investment company status was based on the 1982 amendment to the regulation promulgated by the Division interpreting N.J.S.A 54:10A-4(f). Accordingly, this case raises the interrelated issues of how properly to interpret N.J.S.A. 54:10A-4(f), and whether the regulation implemented to clarify its terms is valid. Specifically, this court must determine if the Division can consider the nature of a corporation’s deductions as well as its income and assets when evaluating the corporation’s “business,” as the term is used by the Legislature in N.J.S.A 54:10A-4(f).

*590
Legal standards and analysis

“[B]ecause tax liability is established by way of revenue legislation,” Stryker Corp. v. Director, Div. of Taxation, 168 N.J. 138, 155, 773 A.2d 674 (2001), “the general rules of statutory construction apply to tax statutes.” Oberhand v. Director, Div. of Taxation, 193 N.J. 558, 568, 940 A.2d 1202 (2008); American Fire & Cas. v. Director, Div. of Taxation, 189 N.J. 65, 78-79, 912 A.2d 126 (2006). “That the Legislature may delegate to an administra tive agency the authority to promulgate rules and regulations interpreting and implementing a statute is beyond peradventure.” T.H. v. Division of Developmental Disabilities, 189 N.J. 478, 490, 916 A.2d 1025 (2007). And, “[a]n agency’s regulations adopted pursuant to a legislative mandate or grant of authority enjoy presumptive validity.” Ibid. Indeed, “[w]hen an administrative agency that is charged with enforcing a statute interprets that statute, we give substantial deference to the agency’s interpretation.” Oberhand, supra, 193 N.J. at 568, 940 A.2d 1202.
But, such deference is not absolute. An agency regulation will be set aside “if it is proved to be arbitrary and capricious, plainly transgresses the statute it purports to effectuate, or alters the terms of the statute and frustrates the policy embodied in it.” In re Adopted Amendments to N.J.A.C. 7:7A-2.4, 365 N.J.Super. 255, 265, 839 A.2d 60 (App.Div.2003). A regulation may not thwart legislative intent or give a statute “greater effect than its language permits.” GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306, 625 A.2d 468 (1993). The party challenging the regulation has the burden of proving the regulation is invalid. New Jersey State League of Municipalities v. Department of Cmty. Affairs, 158 N.J. 211, 222, 729 A.2d 21 (1999).
The Division moved for summary judgment and Regent did not oppose the motion.[8] When a party moves for summary judgment, *591 “the judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories[,] ... admissions [, and] affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(e). In correspondence to the Division, attached and made a part of the Complaint, Regent alleged “the determination of whether 90% or more of the total deductions are incurred for holding, investing and reinvesting in cash and/or investment assets is factually based. The New Jersey Division of Taxation was capricious in arbitrarily assuming that the Taxpayer’s deduction were not attributable to such investments.” Despite its initial allegation that the Division’s determination was “factually based,” Regent has made absolutely no showing of the existence of a material fact to warrant a trial of this matter.
During the discovery process, the Division inquired about the nature of the rent and employee benefit deductions, which Regent alleged were pro rata to income. The interrogatory response consisted of one sentence in which Regent restated the monthly rental amount and Mantell’s address. As to the employee benefit, Regent simply replied that the medical reimbursement plan provided Mantell, the former employee, with medical reimbursement during and after his employment.
Rather than oppose the Division’s motion for summary judgment, Regent filed a cross-motion for summary judgment arguing that the Division was without authority to enact the deduction test. In its cross-motion, Regent adopted the Division’s statement of facts as its own. It did not mount a factual challenge to the agency’s rejection of Regent’s bare claim that the deductions were incurred pro rata to income.
For example, Regent offered no evidence of the work performed in collecting the income realized from the prior retail sales as distinguished from activity that generated investment income. There was no indication how Regent went about collection of the aged receivables, whether that involved active collection activities or the receipt of checks with no effort toward collections. Similar *592 ly, Regent said that the corporate books were located in the rented space but did not offer a description of the accounting/bookkeeping activities, including the amount of time spent, for each business. This information would have enabled Regent to appropriately allocate the rental expense to investment related versus non-investment related activity for the Division’s review. Likewise, there was no issue of fact raised to challenge the Division’s finding that the employee medical benefit deduction did not qualify as investment-related. Notably, however, the undisputed facts reveal that Mantell was never employed by the investment company.
In the end, rather than offer evidence to show its deductions were investment related, Regent relied on its eonclusory assertion that the company’s deductions were “pro rata to income” to prove the test was met. Based on these facts, that approach would render the deduction test a nullity; that approach would permit a taxpayer to meet the deduction test by simply stating its deductions mirrored its income without offering any substantiating proof.
“Bare conclusions in the pleadings, without factual support in tendered affidavits, will not defeat a meritorious application for summary judgment.” United States Pipe & Foundry Co. v. American Arbitration Ass’n, 67 N.J.Super. 384, 399-400, 170 A.2d 505 (App.Div.1961). Where appropriately granted, summary judgment achieves its purpose as a “prompt, businesslike and inexpensive method of disposing of any cause which a discriminating search of the merits in the pleadings, depositions and admissions on file, together with the affidavits submitted on the motion clearly shows not to present any genuine issue of material fact requiring disposition at trial.” Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 74, 110 A.2d 24 (1954). See also Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523, 666 A.2d 146 (1995). In applying the requisite standard, the court finds there are no material issues to be resolved at trial. Rather, Regent’s challenge on the motions for summary judgment remained limited to the validity of the regulation, which is a question of law. In re *593 Liquidation of Integrity Ins. Co., 193 N.J. 86, 94, 935 A.2d 1184 (2007) (issues of statutory interpretation are “question[s] of law.”) (quoting Toll Bros., Inc. v. Township of West Windsor, 173 N.J. 502, 549, 803 A.2d 53 (2002)). As such, this matter is ripe for determination by summary judgment.
A court reviewing a regulation against a claim that it is arbitrary and at odds with the statute it is designed to interpret must ascertain the intent of the Legislature with respect to the relevant provision. In re Agricultural, Aquacultural, and Horticultural Water Usage Certification Rules, N.J.A.C. 7:20A-1.1 et seq., 410 N.J.Super. 209, 224, 981 A.2d 99 (App.Div.2009). With respect to taxation in particular, the Supreme Court has said,
[i]t is elementary that in the area of construction of statutes, particularly those having to do with taxation or exemption therefrom, our sole guidepost is the legislative intent. We can have no concern, short of constitutional considerations, with the wisdom of policy of a tax statute ... [t]he best approach to the meaning of a tax statute is to give to the words used by the Legislature ‘their generally accepted meaning, unless another or different meaning is expressly indicated.’ Public Serv. Elec. & Gas Co. v. Township of Woodbridge, 73 N.J. 474, 478, 375 A.2d 1165 (1977)(internal citation omitted).
The Legislature included two terms in the statute to define an investment company, namely the word “business” and a quantitative measure of “90%.” Yet, the term “business” is not defined within the statute, and the kind of corporate activity the Legislature intended (or did not intend) taxpayers and the Division to consider when determining a corporation’s status as an investment company is likewise omitted. This court’s analysis of the issues begins with an examination of the term “business” as defined by case law.
In Flint v. Stone Tracy Co., the United States Supreme Court defined “business” broadly as part of its analysis of the Tariff Act of 1909. 220 U.S. 107, 171, 31 S.Ct. 342, 357, 55 L.Ed. 389, 421 (1911), overruled on other grounds by Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). The Court said “business” is that “which occupies the time, attention and labor of men for the purpose of a livelihood or profit[.]” Ibid. The Court continued, “[bjusiness is a very comprehensive term and embraces everything about which a *594 person can be employed.” Ibid. In later cases, the Supreme Court returned to the Flint definition of business. In Commissioner v. Groetzinger, the Court cited with approval the Flint Court’s conclusion that business is a “broad and comprehensive” term. 480 U.S. 23, 31, 107 S.Ct. 980, 985, 94 L.Ed.2d 25, 35 (1987).
New Jersey courts considering the meaning of “business” have deferred to the federal approach. The Division of Taxation adopted the Supreme Court definition, as evident in at least one regulation implementing another provision of the CBT. The term “business” is defined at N.J.A.C. 18:7-1.9 (entitled “Doing business in New Jersey”), as follows: “(a) The term ‘doing business’ is used in a comprehensive sense and includes ‘all activities which occupy the time or labor of men for profit.’ ”
Despite the broad connotation of the word “business” recognized by the courts, Regent urges this court to conclude that the term “business” as used in the statute is limited to “gross income.” As is well settled, statutory interpretation requires the court to give effect to every word used by the Legislature, cognizant that the Legislature was purposeful in its selection of terms used. Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 527, 197 A.2d 673 (1964). Regent’s interpretation would require this court to disregard the express statutory language. Certainly, had the framers of the investment company statute intended to use “gross income” as the sole measure, rather than the term “business,” they would have done so.
In fact, the Legislature has identified gross income as the specific measure to use in qualifying other entities under the CBT. N.J.S.A. 54:10A-4(r) defines “qualified investment partnership” in terms of “gross income.” The statute reads,
‘Qualified investment partnership’ means a partnership under this act that has more than 10 members or partners with no member or partner owning more than a 50% interest in the entity and that derives at least 90% of its gross income from dividends, interest, payments with respect to securities loans, and gains from the sale or other disposition of stocks or securities or foreign currencies or commodities or similar income (including but not limited to gains from swaps, options, fixtures or forwai’d conti’acts) derived with respect to its business of investing or trading ‘investment pai'tnei’ship’ shall not include a ‘dealer in securities’ within the meaning of section 1236 of the fedei’al Internal Revenue Code of 1986, 26 U.S.C. s. 1236.
*595 N.J.S.A. 54:10A-4(r)
This court will not substitute its judgment for that of the Legislature. In choosing the broad term “business,” the Legislature placed no limits on the specific measures to be considered in defining an investment company. Therefore, it is reasonable to conclude that review of more than just “gross income” to qualify the “business” of such an entity is authorized by the statute. The court finds that the regulation does not give the statute “greater effect than its language permits.” GE Solid State, Inc., supra, 132 N.J. at 306, 625 A.2d 468. Rather, such an interpretation by the Division comports with the language of the statute.
The Division relies on the legislative history of the statute, and of the regulation’s 1982 amendment, in further support of its argument that expenses do not constitute an arbitrary measure of a company’s “business.” Indeed, along with a review of the express statutory language, courts may also look to “the policy behind [a statute]” and “concepts of reasonableness and legislative history” when interpreting the statute. Johnson Mach. Co. v. Manville Sales Corp., 248 N.J.Super. 285, 304, 590 A.2d 1206 (App.Div.1991).
The Legislature’s initial definition of “investment company” was enacted in direct response to a report issued by the New Jersey Commission on State Tax Policy in 1947. In that report, the Commission identified as an issue of concern the CBT’s treatment of investment companies. The Commission favored the expansion of preferential tax treatment for “all investment companies, including the so-called personal holding companies” so they would be on par with regulated investment companies. The New Jersey Commission on State Tax Policy, Second Report, 102-04 (Mar. 24, 1947). The language of the Report reflects the concerns about the loss of tax revenue caused by relocation of companies from New Jersey to New York voiced by members of the Commission.
The merits of the case presented by regulated investment companies are somewhat related to the question of expediency in the taxation of all investment companies. This type of business normally desires to center its activities in the New York financial market, and the principal office of such a business may readily be moved from Jersey City to New York City, and vice versa. Most of the large taxpayers, or potential taxpayers, are Delaware corporations and their only activity usually is *596 represented by the maintenance of a small office and staff, provision for receipt and delivery of securities, and maintenance of bank deposits and other types of banking business, a type of business which is concentrated among the banks located in Jersey City. To the extent that our tax law creates a tax liability equal to or in excess of that in New York, this type of company and the financial business it brings to New Jersey tends to move out of the State.
The problem of dealing with investment companies tax-wise is thus not so much a matter of the reasonableness of the tax itself, or even of the loss entailed in making adjustments, since the entire tax yield provided by this class of company is affected when the companies move out of state. Essentially the problem is that of reaching a working level of taxation which will enable New Jersey business to compete in the New York metropolitan financial market. Experience over the last year has shown that a substantial number of the type of financial corporations under consideration have removed from the State during the year.”
Ibid, at 103.
The Division argues that the Regent corporate model was not intended to qualify as an investment company based on the type of entity envisioned by the Commission. According to the Division, the language of the Commission Report reveals the understanding of an investment company as a business with a limited purpose and operations, i.e., small office, small staff and banking operations.
By its express terms, the statute carefully circumscribes the kind of activity that will qualify an entity for treatment as an investment company in apparent response to the Commission’s statements. For example, the company’s business must consist almost exclusively of investment related activities which are enumerated in the statute. The same applies to the gross assets of the entity. Further, certain activities expressly disqualify an entity from successful election as an investment company, including one “regularly engaged in buying and selling” to customers as “a merchant or a dealer of stocks, bonds, and other securities.” The statute also prohibits a “banking corporation, savings institution, or a financial business corporation” as defined by the CBT, from its reach.[9] This court finds that in enacting the investment company statute, the Legislature intended to provide preferential treatment to a discreet brand of business.
*597 The Division also relies on the legislative history of the 1982 amendment to the regulation which includes an (unreported) Appellate Division case as the impetus for the amendment. Foster Estates, Inc. v. Director, Div. of Taxation, No. A-1538-78 (App.Div. Feb. 26, 1980) (slip op. at 2) (per curiam). In Foster Estates, the Appellate Division emphasized the need for administrative guidance and urged the Division to promulgate formal regulations incorporating appropriate measures of business. The court further recognized that qualifying an investment company based on its business might involve looking beyond the dollar amount of income earned and the type of assets held to other measures of corporate activity.[10]
The court stated:
The statutory qualification must be established that at least 90% of an investment company’s business in the tax year consisted of holding, investing and reinvesting investment type securities ... Income is one measure of business, uniformly applied for that purpose by administrative practice since the enactment of the investment company tax preference statute. Other measures of business include, hypothetically, allocation of employee hours, wages, materials and other business expenditures.
Ibid, at 4.
In other words, according to the Appellate Division, “alternative proofs of business activity [besides income]” might be relevant to *598 the question of whether a company deserves investment company status. Ibid, at 5.
The Division relied as well on a second unreported decision, National Wax Paper Company v. Director, Div. of Taxation, MC 386-72 (Tax Court Sept. 18, 1981). In that case, decided prior to the 1982 amendment to the regulation, the Tax Court considered whether an entity qualified as an investment company and recognized that deductions are an important part of determining the primary purpose of a business.
Agency regulations are promulgated to aid in the practical application of a statute to achieve the legislative purpose. The regulation at issue provides a reasonable mechanism for the agency to determine the primary purpose of the business from CBT returns and other information provided by the taxpayer. Total income and assets reflected by bare dollar figures may not be sufficient to identify the nature of the activities conducted by a corporation. When considering qualification as an investment company, deductions may provide an alternative way to ascertain corporate activity, as recognized by the courts in Foster Estates and National Wax Paper. The deduction test may be particularly useful when a company conducts more than one business, as reflected in the CBT returns filed by Regent. Regent conducted two businesses each separate and distinct from the other, one in retail sales and a second investing in securities. Ultimately, examination of corporate expenses can provide assistance to the agency in the proper assessment of a business engaged predominately in investment activity, or as non-investment related.
Moreover, tax preferences must be strictly construed against the taxpayer. See Body-Rite Repair Co. v. Director, Div. of Taxation, 89 N.J. 540, 544, 446 A.2d 515 (1982); MacMillan v. Director, Div. of Taxation, 180 N.J.Super. 175, 178, 434 A.2d 620 (App.Div.1981), aff'd, 89 N.J. 216, 445 A.2d 397 (1982). See also Chemical New Jersey Holdings, Inc. v. Director, Div. of Taxation, 20 N.J.Tax 547, 560 (Tax 2003).
*599 The court finds Regent’s challenge that the regulation impermissibly exceeds the scope of the statute due to the sheer length of each of the enactments has no bearing on validity of the regulation. Likewise, contrary to Regent’s contentions, the regulation will not be struck down because considering deductions might arbitrarily qualify an investment company one year but not the next.[11] The taxpayer is correct that, because the regulation requires deductions to be investment related, the nature of a company’s expenses may affect its qualification from year to year. However, that consequence does not affect the validity of the regulation. It is well settled, “while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice.” General Trading Co. v. Director, Div. of Taxation, 83 N.J. 122, 136-37, 416 A.2d 37 (1980) (citing Commissioner v. National Alfalfa Dehydrating and Milling Co., 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717, 727 (1974)). A taxpayer may decide to elect investment company status and accept limitations on the deductions it may take; or, a taxpayer can opt to take certain deductions which might disqualify it from preferential tax treatment as an investment company.
The court finds that sufficient support to invalidate the deduction test here is lacking. The deduction test included in the administrative regulation implemented to clarify N.J.S.A. 54:10A-4(f) is neither arbitrary nor unreasonable and is consistent with the intent of the statute and the term “business” as it has been broadly defined. Thereby, the regulation is a valid exercise of the Division’s authority under the CBT.
The court further finds that the language of the regulation (and of the worksheet examples set forth at the end of the regulation) support a finding that neither a deduction for office *600 rental expense, nor for an employee medical benefit, is wholly disallowed as unrelated to an investment qualified activity. However, here Regent failed to make the necessary factual showing that the expenses in this case were 90% investment related.
For all of the reasons set forth above, the court finds that the regulation is valid. The Division’s motion for summary judgment is granted and the cross-motion for summary judgment is denied. The matter is dismissed. Orders will issue.

 Mantell formed Regent pursuant to I.R.C. § 351. Generally, the Internal Revenue Code allows controlling shareholders to incorporate a business tax-free by transferring assets and liabilities to the corporation solely in exchange for the corporation’s stock. See I.R.C. § 351(a) ("No gain or loss shall be recognized if property is transferred to a corporation by ... persons solely in exchange for stock in such corporation and immediately after the exchange such ... persons are in control ... of the corporation.”).

 The letter was not provided to the court.

 In each year, the amount of Regent’s deduction for rent exceeded 10% of its total deductions as did the amount of Regent's deduction for the medical reimbursement plan. Rent accounted for 25%, 28%, and 21% of the total. The medical benefit deduction was 38%, 39%, and 53% of the total.

 The letter was not provided to the court.

 N.J.S.A. 54:10A-5(d)

 At the same time the Legislature enacted the Corporation Business Tax Act, it created the Commission on State Tax Policy. The role of the Commission was to "engage in continuous study of the State and local tax structure and related fiscal problems, with particular attention to (a) all laws relating to the assessment and collection of taxes in this State; (b) all proposals for change in such laws; and (c) the impact of Federal tax laws on the State financial structure.” In 1947, the Legislature amended the CBT to give non-regulated investment companies preferential tax treatment in direct response to recommendations put forth by the Commission in its Second Report. See Sponsor's Statement to Bill No. 464, 171st Leg. (N.J. April 14, 1947) ("This bill incorporates the several changes in the Corporation Business Tax Act (1945) recommended in the Second Report of the Commission on State Tax Policy.”).

 In 1971, the Legislature deleted the 10 percent stock ownership prohibition in the case of investment companies. L. 1971, c. 267. In 1975, the Legislature amended the definition to exclude from preferential tax treatment certain banks and financial business corporations. L. 1975, c. 171.

 The court raised with the parties the fact that Regent had not filed opposition to the motion and permitted additional time for filing. However, no opposition was received by the court or by the Division.

 Moreover, as previously noted, the investment company statute initially limited the ownership of other entity corporate stock to 10%.

 When the proposed amendment to N.J.A.C. 18:7-1.15 appeared in the New Jersey Register in 1981, it was accompanied by the following comment: "As a result of an opinion of the New Jersey Superior Court, Appellate Division, the Division of Taxation was advised to enact a rule defining investment companies or, in other words, to list the qualifications to be an investment company under the Corporation Business Tax Act, N.J.S.A. 54:10A-1, et seq. There is no social impact since the rule regarding the definition of investment companies is being amended at the direction of the New Jersey Superior Court, Appellate Division, which will clarify the Division's requirements regarding what a taxpayer must meet to get the special treatment given to investment companies under the provisions of the Corporation Business Tax Act. The amended rule will not have any economic impact because the employees of the Division of Taxation will be given additional tests in the rule that follows for administrative determination as to whether or not a particular taxpayer meets the qualifications to be an investment company. Such a determination is necessary in order for the Division to administer the provisions of the Corporation Business Tax Act and the rules and regulations regarding the treatment of investment companies.” 13 N.J.R. 684 (October 8, 1981).

 By way of illustration, based on the Division's decision, Regent claims that for any year during which the company incurs a rent expense, the company will not qualify for preferential tax treatment, yet the rent expense will end once Mantell is deceased. According to Regent, "the rent will cease once the former shareholders leave the current premises/' In that event, the company might qualify as an investment company. Therefore, Regent contends, the regulation results in an arbitrary distinction.