**TAX COURT OF NEW JERSEY**



**JOSEPH M. ANDRESINI, P.J.T.C.**
PRESIDING JUDGE

125 State Street, Suite 100
Hackensack, NJ 07601
Tel: (609)815-2922 ex. 54570
Fax: (201)996-8052

**NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS**

July 10, 2019

Carl A. Rizzo, Esq.
Cole Schotz P.C.
25 Main Street, P.O. Box 800
Hackensack, New Jersey 07602

William F. Rupp, Esq.
Chasan Lamparello Mallon & Cappuzzo
300 Lighting Way, Suite 200
Secaucus, New Jersey 07094

Joseph A. Palumbo
Deputy Attorney General
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 106
Trenton, New Jersey 08625

> Re:    Glenpointe Associates IV, LLC v. Twp. of Teaneck and
>        Director, Division of Taxation
>        <u>Docket No. 013983-2018</u>

Dear Counsel:

The letter represents the court's findings of fact and conclusions of law regarding plaintiff's

motion and defendants' cross-motions for summary judgment in this matter. This case is about

the calculation of Non-Residential Development Fees ("NRDF") for plaintiff's development of a

hotel in accordance with the Statewide Non-Residential Development Fee Act ("Fee Act"), <u>L.</u>

2008, <u>c.</u> 46, §§ 32-38 (N.J.S.A. 40:55D-8.1 to -8.7). As of its effective date of July 17, 2008, the

Fee Act set the NRDF at 2.5% of equalized assessed value of both the improvements and the land

*

being developed. N.J.S.A. 40:55D-8.4(a)(1). The NRDF statute at issue in the instant matter provides, in relevant part, that:

> Whenever non-residential development is situated on real property that has been previously developed with a building, structure, or other improvement, the non-residential development fee shall be equal to two and a half (2.5) percent of the equalized assessed value of the land and improvements on the property where the non-residential development is situated at the time the final certificate of occupancy is issued, less the equalized assessed value of the land and improvements on the property where the non-residential development is situated, as determined by the tax assessor of the municipality at the time the developer or owner, including any previous owners, first sought approval for a construction permit, including, but not limited to, demolition permits, pursuant to the State Uniform Construction Code, or approval under the "Municipal Land Use Law," P.L.1975, c.291 (C.40:55D-1 et seq.). If the calculation required under this section results in a negative number, the non-residential development fee shall be zero.
>
> [N.J.S.A. 40:55D-8.6(c)]

The written submissions and oral arguments of the parties in this matter require that the court address two issues pertaining to the Fee Act.

The first issue concerns whether the subject property was improved for the purposes of calculating a NRDF. The second issue concerns the correct date to be used to determine the preexisting value of the subject property for the purposes of computing the NRDF owed by plaintiff. For the reasons stated more fully in the court's decision to follow, the court now finds that with regard to the first issue, the subject property had parking lot improvements that preexisted the hotel construction for the purposes of calculating a NRDF, therefore, summary judgment is granted in favor of plaintiff and defendant, the Director, Division of Taxation on this issue. With regard to the second issue, the correct date to be used to determine the preexisting value of the subject property is December 9, 2014, the date the developer first sought approval under Municipal

2

Land Use Law, as opposed to the later May 2, 2016 date that the developer first sought construction permits. Summary judgment is granted in favor of both defendants on this issue.

## FINDINGS OF FACT AND PROCEDURAL HISTORY

The court makes the following findings of fact based on the parties' written submissions as well as oral arguments. R. 1.7-4. The material facts of this case are not in dispute.

Plaintiff Glenpointe Associates IV, LLC ("Glenpointe") is the owner of real property in defendant, Township of Teaneck ("Township"). The property is designated as Block 4403, Lot 1 and is commonly known as One Glenwood Avenue, Teaneck, New Jersey ("subject property").

On December 9, 2014, Glenpointe submitted an application to the Township Planning Board for Preliminary and Final Site Plan and waiver approvals to develop the subject property for a 350-room 13-story hotel. On December 24, 2014, Glenpointe submitted the application along with all of the required reports, plans and fees to the planning board. On March 19, 2015, the Township Planning Board approved Glenpointe's application. As of December 9, 2014, the subject property was listed as vacant land and was assessed at $732,000, with the entire amount allocated to land and $0 for improvements. The equalization ratio for the Township at said time was 113.81%.

On May 2, 2016, Glenpointe applied for a permit to install pilings at the subject property. This permit was issued on May 5, 2016. Glenpointe thereafter applied for construction permits for the hotel at the subject property on May 19, 2016, which was issued by the Township on September 7, 2016. As of May 2, 2016 – and following a complete revaluation for Tax Year 2015 – the subject property was listed as vacant land and assessed at $9,975,000, again with the entire amount allocated to land and $0 for improvements. The equalization ratio for the Township at said time was 95.00%.

3

On July 18, 2018, Glenpointe submitted an application for a Certificate of Occupancy for the subject property. This was issued on July 26, 2018. The equalization ratio for the Township at said time was 90.27%.

In August, 2018, Glenpointe completed the development of the hotel project. Thereafter the Township's Tax Assessor imposed a NRDF on Glenpointe in the amount of $1,271,854. Glenpointe paid the same under protest and appealed its imposition to defendant, Director, Division of Taxation ("Director") as permitted under N.J.S.A. 40:55D-8.6(b). The Director found that under N.J.S.A. 40:55D-8.6(c), December 9, 2014 was the date to be used for the purposes of calculating the NRDF because that was the date that Glenpointe first sought approval under the Municipal Land Use Law ("MLUL") for its site plan and waivers. Further, the Director noted that the value for the pre-existing improvements and land was not deducted from the Township assessor's NRDF calculation, and that in addition to the exempt parking facilities, the Township should have deducted the equalized assessed value of the preexisting land and improvements from the NRDF calculation. The Director deemed this deduction appropriate because both Glenpointe and the Township acknowledged that there was pavement for a parking lot on the subject property as of December 9, 2014, the date that Glenpointe first sought the land use approvals. The Director accepted the Township assessor's value for the new parking facilities of $4,470,000. Based on these values, the Director provided a revised calculation of the NRDF for the hotel project as follows:

2014 Assessment: $732,000
2014 Director's Ratio: 113.81%
2014 Equalized Assessed Value: $732,000 ÷ 1.1381% = $643,177

2018 Assessment after Project Completion: $50,202,900
2018 Assessed Value of Parking Structure: $4,470,000
2018 Value Subject to NRDF: $50,202,900 – $4,470,000 = 45,732,900
2018 Director's Ratio: 90.27%

4

2018 Equalized Assessed Value Subject to NRDF: 45,732,900 ÷ .9027 = $50,662,346

2018 Equalized Assessed Value Subject to NRDF less 2014 Equalized Assessed Value:
  $50,662,346 – $ 643,177 = $50,019,169

NRDF Amount:  $50,019,169 x .025 = $1,250,479
Refund due:  $1,271,854 – $1,250,479 = $21,375

Thereafter, Glenpointe filed a complaint with this court demanding a judgment reducing the NRDF and refunding to plaintiff the sum of $254,184.47, "as a result of the Assessor's failure to properly deduct $10,437,376 (the equalized value of the $9,975,000 assessment which he placed on the preexisting property value) from the final value of the non-exempt property after completion of the hotel development project that is the subject of the present NRDF, along with interest . . ." Glenpointe also challenged the Director's conclusion with respect to the appropriate measure of deduction corresponding to the equalized value of the assessment relating to the preexisting land and improvements on the subject property.

The Township filed a counterclaim demanding a judgment upholding the assessor's original calculation of the NRDF in the sum of $1,271,854.  The Director responded to both Glenpointe's complaint and the Township's counterclaim demanding affirmation of the Director's calculation of the NRDF in the sum of $1,250,479.

On March 1, 2019, Glenpointe filed the instant motion for summary judgment.  First, Glenpointe argues that the correct date for determining the value of the land and improvements that pre-existed the development of the hotel for the purposes of calculating the NRDF was May 2, 2016, the date when Glenpointe first sought issuance of a construction or demolition permit with respect to the subject property.  In reaching this conclusion, Glenpointe does not primarily rely on N.J.S.A. 40:55D-8.6, believing it to be ambiguous.  Instead, Glenpoint relies on the Director's FORM N-RDF and its instruction section, which was generated by the Director to assist and guide

5

municipal assessors in complying with the Fee Act. Second, Glenpointe maintains that in calculating the NRDF, the Township failed to account for improvements made prior to the development project including: a parking lot; curbing; fencing; sewer lines; storm drainage lines and structures; signage; transformers; and a bus shelter. Glenpointe points to the fact that the Director did find that notwithstanding the Township's assessment of the property as land only, there preexisted a paved parking lot on the subject property that had value and along with the land value needed to be deducted when determining the appropriate NRDF.

The Township and the Director duly opposed Glenpointe's motion and cross-moved for summary judgment. With regard to the alleged improvements on the subject property, the Township takes the position that no deduction for prior equalized assessed value of the land should have been taken since the construction of the hotel constituted new non-residential construction on "what was essentially a vacant unimproved lot." Accordingly, the NRDF should be calculated on the basis of new non-residential construction on unimproved land. Further, the Township argues that December 9, 2014, the date Glenpointe first sought approval under the MLUL, is the statutorily correct date for determining the value of the land and improvements that pre-existed the development of the hotel for the purposes of calculating the NRDF.

The Director agrees with Glenpointe that there was in fact a preexisting paved parking lot on the subject property, and therefore, the equalized assessed value of the land and improvements needed to be deducted when determining the appropriate NRDF. However, the Director disagrees with Glenpointe and agrees with the Township on the issue of the appropriate date for determining the value of the land and improvements that pre-existed the development of the hotel for the purposes of calculating the NRDF. The Director argues that under the plain language of the statute,

6

there is no ambiguity as to the date used to determine the pre-existing value, and which here should be December 9, 2014, the date that Glenpointe first sought approval under the MLUL.

In response, Glenpointe reiterates its position that the statute is ambiguous. It insists that the Fee Act statute in and of itself has no answer to the question of which alternative triggering date – the date the developer first sought a construction or demolition permit versus the date the developer first sought approval under the MLUL – controls and should be used for the calculation of NRDF. Again, Glenpointe maintains that the Director's FORM N-RDF and its General Instructions are the most "telling and influential" pieces of evidence in this matter. With regard to improvements, Glenpointe argues that "[i]t is beyond dispute" that the property previously included a paved parking lot as of the date to be used for determination of NRDF.

At oral argument Glenpointe maintained that because all construction of non-residential developments, including additions to existing structures, require approval under the MLUL, reading "first" as to both seeking approval for a permit and seeking approval under the MLUL would render the language concerning construction or demolition permits "impermissibly superfluous." Glenpointe claims that the statutory "choice" between the two alternative dates would be "illusory" as approval under the MLUL would necessarily have to come first. The court allowed Glenpointe to reiterate this argument in yet another supplemental briefing.

With permission from the court, the Township and the Director thereafter responded citing several examples in which a construction or demolition permit would be sought prior to seeking approval under the MLUL in connection with non-residential development. They also point out that construction or demolition permits could be sought prior to seeking MLUL approval in a municipality that has not elected to adopt the MLUL in the first place.

7

## SUMMARY JUDGMENT

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). An genuine issue of fact exists "only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid. Although the evidence is to be viewed most favorably toward the non-moving party, summary judgment may not be denied simply because the non-movant demonstrates the existence of a disputed fact. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540-41 (1995). Rather, denial is only appropriate where the evidence is of such a quality and quantity that reasonable minds could return a finding favorable to the party opposing the motion. Id. at 540.

Here, the only issues are: (1) whether the subject property was improved for the purposes of calculating a NRDF; and (2) what the correct date is to determine the preexisting value of the subject property for the purposes of computing the NRDF owed by Glenpointe. The court finds that there is no genuine issue as to a material fact in the matter; therefore, a decision by summary judgment is appropriate.

## STANDARD OF REVIEW

A presumption of correctness is attached to the Director's assessment. See Meadowlands Basketball Assocs. v. Dir., Div. of Taxation, 19 N.J. Tax 85, 90 (Tax 2000), aff'd, 340 N.J. Super. 76 (App. Div. 2001). Furthermore, "the Director's construction of the operative law, which is not plainly unreasonable and with which the Legislature has not interfered, is entitled to prevail."

8

Aetna Burglar & Fire Alarm Co. v. Dir., Div. of Taxation, 16 N.J. Tax 584, 589 (Tax 1997) (citing Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 327 (1984)). However, "courts remain the final authorities on issues of statutory construction" and have no obligation to summarily approve "the administrative interpretation." N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575 (1978) (citation and internal quotation marks omitted). "An administrative agency may not under the guise of interpretation extend a statute to include persons not intended, nor may it give the statute any greater effect than its language allows." Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 528 (1964).

When determining the meaning of a statute, the court must first consider the plain language. See GE Solid State v. Dir. Div. of Taxation, 132 N.J. 298, 307 (1993). "If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." State v. Butler, 89 N.J. 220, 226 (1982). Nonetheless, "if the plain language of a statute creates uncertainties or ambiguities, a reviewing court must examine the legislative intent underlying the statute and 'construe the statute in a way that will best effectuate that intent.'" Musikoff v. Jay Parrino's the Mint, L.L.C., 172 N.J. 133, 140 (2002) (quoting N.J. State League of Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 224 (1999)). "In undertaking that task, courts may ascertain the intent of the drafters by looking to extrinsic sources such as the statute's underlying purpose and history." Ibid. (citing Clymer v. Summit Bancorp., 171 N.J. 57, 66 (2002)). "Above all, [a court] must seek to effectuate the 'fundamental purpose for which the legislation was enacted.'" Ibid. (quoting Twp. of Pennsauken v. Schad, 160 N.J. 156,170 (1999)).

The Legislature can "delegate to an administrative agency the authority to promulgate rules and regulations" that interpret and implement statutes. T.H. v. Div. of Developmental Disabilities,

189 N.J. 478, 490 (2007). Such regulations are necessary to assist in the application of statutes "to achieve the legislative purpose." Regent Corp. of Union, Inc. v. Dir., Div. of Taxation, 27 N.J. Tax 577, 598 (Tax 2014). However, an administrative agency may not undermine legislative intent by giving a statute "greater effect than its language permits." GE Solid State, 132 N.J. at 306. When an administrative agency is delegated the authority to enforce a statute, its interpretation receives substantial deference. In re Adopted Amendments to N.J.A.C., 365 N.J. Super. 255, 264-65 (App. Div. 2003). Nonetheless, an agency regulation will fail if it … "alters the terms of the statute and frustrates the policy embodied in it." Id. at 265.

## IMPROVEMENTS

Under the plain language review, N.J.S.A. 40:55D-8.4(a) and 40:55D-8.6(c) speak to the existence of improvements on a property in determining which formula to use in calculating a NRDF, and do not require that a municipality has allocated a value to those improvements for purposes of local property taxation. The record indicates that on all relevant dates, the subject property had been improved with a parking lot structure. Not only are Glenpointe and the Director in agreeance on this point, but the Township, through the certification of its Construction Code Official and Plumbing Subcode Official, readily admits that prior to the development of the subject property for the hotel use, the subject premises had been used as a parking lot.[1]

The court thus finds the subject property was improved for the purposes of the Fee Act, therefore, the equalized assessed value of the pre-existing land and improvements were properly

---

[1] During oral argument, the Township also suggested that whatever parking lot improvements existed on the subject property, they were de minimis in nature and consequently should be disregarded. However, the Legislature does set any such threshold level of improvement that needs to be met in order to qualify as an improvement under the Fee Act. The court will abstain from making a determination on this issue and leaves it to the Legislature.

10

deducted in calculating the NRDF. On this point, the court grants summary judgment to Glenpointe and the Director, and denies the same to the Township.

The court will now turn to the issue of the correct date for calculating the NRDF under N.J.S.A. 40:55D-8.6(c).

## DATE FOR DETERMINING THE NRDF

As noted above, the Fee Act was enacted on July 17, 2008. As of its effective date, the Fee Act set non-residential development fees at 2.5% of equalized assessed value of both the improvements and the land being developed. N.J.S.A. 40:55D-8.4(a)(1).

The NRDF statute at issue is effectuated by the Director and proves, in relevant part, that:

> Whenever non-residential development is situated on real property that has been previously developed with a building, structure, or other improvement, the non-residential development fee shall be equal to two and a half (2.5) percent of the equalized assessed value of the land and improvements on the property where the non-residential development is situated at the time the final certificate of occupancy is issued, less the equalized assessed value of the land and improvements on the property where the non-residential development is situated, as determined by the tax assessor of the municipality at the time the developer or owner, including any previous owners, first sought approval for a construction permit, including, but not limited to, demolition permits, pursuant to the State Uniform Construction Code, or approval under the "Municipal Land Use Law," P.L.1975, c.291 (C.40:55D-1 et seq.). If the calculation required under this section results in a negative number, the non-residential development fee shall be zero.
>
> [N.J.S.A. 40:55D-8.6(c)]

Form N-RDF, "State of New Jersey Non-Residential Development Certification/Exemption," and its instruction section, which is authorized and generated by the Director, provides guidance in this regard. "Section A" is to be completed by the developer as to the following: (1) the date when the developer "received preliminary and/or final site plan approval"; (2) the date when the developer "first sought construction or demolition permit" (citing

11

N.J.S.A. 40:55D-8.6); and (3) the date when the developer "received construction/demolition permit." "Section B" consists of a 6 line box chart that is to be completed by the assessor in order to determine the NRDF. The text adjacent to Line 4 of the calculation chart instructs that if there are pre-existing improvements on the property, the assessor should enter the equalized assessed value of land and improvements on that line. In the alternative, if the property involves new construction on vacant land, the assessor should enter "$0.00 or NA."

The second page of the Director's Form N-RDF consists of "General Instructions." The third paragraph under the section that reads "For Assessor" states: "[i]f the development is situated on real property that was previously developed with a building, structure, or other improvement, the [NRDF] is assessed on the value of the new improvements only, without including the value of the land or the existing improvements, and [Line 4] should show the existing equalized assessed value of the land and improvements as of the date listed in Section A when the construction or demolition permit was first sought." These General Instructions do not make any reference to the date in which approval was sought under the MLUL.

The court finds that the relevant language of N.J.S.A. 40:55D-8.6(c) is clear and unambiguous on its face and admits of only one interpretation. As such, there is no need for this court to look to extrinsic evidence in order to interpret the statutes meaning. Within the statutory language, the verb "sought" applies to the noun "approval," both as to approval for a construction/demolition permit as well as to approval under the MLUL. The word "first" is used as an adverb to modify "sought." Together, the plain language of the Fee Act is clear that the date to be used for the purposes of determining a NRDF is the chronologically earlier of: (a) the date the developer first sought approval for a construction/demolition permit; or (b) the date the developer first sought approval under the MLUL.

12

Glenpointe maintains that because all construction of non-residential developments, including additions to existing structures, require approval under the MLUL, reading "first" as to both seeking approval for a permit and seeking approval under the MLUL would render the language concerning construction of demolition permits "impermissibly superfluous" and the statutory "choice" between the first dates would be "illusory."

However, there are several readily conceivable factual situations in which this proposed interpretation does not ring true. First, there could exist situations involving municipalities that may not opt to adopt the MLUL development regulations. Second, as even Glenpointe concedes, a developer could seek a demolition permit prior to seeking approval under the MLUL. For example, a developer seeking multiple variances could seek to demolish existing structures before submitting its ultimate development plans for MLUL approval. Third, there are situations in which a property owner or developer are constructing as of right, rendering local approval under the MLUL unnecessary.

Glenpointe's insistent reliance on the Director's Form N-RDF is misplaced. In re Adopted Amendments to N.J.A.C. dictates that an agency's interpretation of a statute will fail if it alters the terms of the statute and frustrates the policy embodied in it. 365 N.J. Super. at 265. As previously discussed, the plain language of the Fee Act statute is clear that the date to be used for the purposes of determining a NRDF is the chronologically earlier of: (a) the date the developer first sought approval for a construction/demolition permit; or (b) the date the developer first sought approval under the MLUL. The Director's Form N-RDF, admittedly, is not as clear. On one hand, Form N-RDF "Section A" instructs the developer to list both of the aforementioned dates. On the other, and for reasons this court will not begin to speculate, the "General Instructions" section on the back of Form N-RDF makes reference only to the date in which the construction or demolition

13

permit was first sought and omits any mention of the date in which approval was sought under the MLUL. Regardless of what Form N-RDF reads, the plain language of the statute is controlling. When an administrative regulation which alters the terms of a statute is not controlling, a form which disregards or omits the words of a statute, is also not controlling.

In the current matter, Glenpointe first sought approval under the MLUL on December 9, 2014. Approximately seventeen months later, on May 2, 2016, it applied for a construction permit. Applying these facts to the plain meaning of the statute, for the purposes of calculating a NRDF, December 9, 2014 is the correct date to be used to determine the preexisting value of the subject property. On this issue, the Director's and the Township's cross-motions for summary judgment are granted, and Glenpointe's motion is denied.

## CONCLUSION

For all of the reasons stated today, the court finds that (1) the subject property had parking lot improvements that preexisted the hotel construction for the purposes of calculating a NRDF, and summary judgment is granted in favor of Glenpointe and the Director on this issue and denied as to the Township; (2) the correct date to be used to determine the preexisting value of the subject property is December 9, 2014, the date Glenpointe first sought approval under MLUL. Summary judgment is granted in favor of the Director and the Township on this issue and denied as to Glenpointe.

Very truly yours,

Hon. Joseph M. Andresini, P.J.T.C.

14